**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re:

MOSDOS CHOFETZ CHAIM, INC.

        Post-Confirmation Debtor

---------------------------------------------------------------x

MOSDOS CHOFETZ CHAIM INC., RABBI MAYER ZAKS, derivatively on behalf of MOSDOS CHOFETZ CHAIM INC., SIMA WEINTRAUB, derivatively on behalf of MOSDOS CHOFETZ CHAIM INC., DANIEL ROSENBLUM, derivatively on behalf of MOSDOS CHOFETZ CHAIM INC., JOSEPH GRUNWALD, derivatively on behalf of MOSDOS CHOFETZ CHAIM INC. and YISROEL HOCHMAN, derivatively on behalf of MOSDOS CHOFETZ CHAIM INC.,

        Plaintiffs,

-against-

MOSDOS CHOFETZ CHAIM INC., CHOFETZ CHAIM INC., TBG RADIN LLC, SHEM OLAM LLC, CONGREGATION RADIN DEVELOPMENT INC., ARYEH ZAKS, BEATRICE WALDMAN ZAKS, HENOCH ZAKS, MENDEL ZAKS, GITTEL ZAKS LAYOSH, SAMUEL MARKOWITZ and STERLING NATIONAL BANK,

        Defendants.

---------------------------------------------------------------x

Chapter 11

Case No.: 12-23616-rdd

Adv. Pro. No. 20-08949-rdd

## PRE-TRIAL BRIEF OF MOVANT RABBI MAYER ZAKS

OTTERBOURG P.C.
230 Park Avenue
New York, New York 10169
(212) 661-9100

*Attorneys for Rabbi Mayer Zaks*

-and-

TWERSKY PLLC
747 Third Avenue, 32nd Floor
New York, New York 10017
(212) 425-0149

*Attorneys for Plaintiffs*

*Of Counsel:*
  Melanie L. Cyganowski, Esq.
  Stanley L. Lane, Jr., Esq.
  Michael R. Maizel, Esq.
  Aaron Twersky, Esq.
  Ilana Neufeld, Esq.

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ........................................................................................... 1

**FACTUAL BACKGROUND** ............................................................................................... 3

    **General Background** ........................................................................................................ 3

    **Mosdos Incorporation and Founding Trustees, Officers** ......................................... 4

    **Purported Changes to Board of Trustees, Officers After Mosdos' Incorporation** ............. 5

    **Confirmation of Mosdos' Chapter 11 Plan and Authorization of Sale** ............................. 7

    **Transfer of the TBG Mortgage and Sale of Property to Entities Controlled or Affiliated with Rabbi Aryeh** ........................................................................................................ 9

**ARGUMENT** ........................................................................................................................ 11

    **The Founding Trustees Were Never Replaced Under N-PCL § 703 and RCL § 195, and Therefore Could Not be Excluded** ....................................................................................... 11

    **Even if Additional Board Members Are Recognized, the Sale of the Property Did Not Comply with N-PCL §§ 509 or 510** ............................................................................... 13

    **The Board's Approval of the Sale of the Property Did Not Comply with N-PCL § 715** .. 15

**CONCLUSION** .................................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Ellis v. Broder*, 812 N.Y.S.2d 851 (N.Y. Sup. Ct. 2006) ............................................................. 13

*Kroth v. Congregation Chebra Ukadisha Bnai Israel Mikalwarie*, 105 Misc. 2d 904
(N.Y. Sup. Ct. 1980) ........................................................................................................... 12, 15

*Machne Menachem, Inc. v. Hershkop*, 237 F. Supp. 2d 227, 240 (E.D.N.Y. 2002) ............... 12, 13

*Nat'l Church of God of Brooklyn, Inc. v. Carrington*, 56 Misc. 3d 1215(a)
(N.Y. Sup. Ct. 2017) ........................................................................................................... 11, 12

*See In re Nat'l Council of Young Israel*, 784 N.Y.S.2d 923 (N.Y. Sup. Ct. 2003) ...................... 14

**Statutes**

11 U.S.C. § 1129(a)(3) ..................................................................................................................... 2

11 U.S.C. § 363(d)(1) ....................................................................................................... 2, 13, 15

N-PCL § 102 .................................................................................................................... 2, 11, 16

N-PCL § 509 ............................................................................................................................ 3, 14

N-PCL § 705 .................................................................................................................................. 12

N-PCL § 706 ............................................................................................................................ 2, 13

N-PCL § 715 ............................................................................................................................ 3, 16

RCL § 195 ................................................................................................................................ 2, 12

RCL § 2-b(1) ................................................................................................................................ 11

Rabbi Mayer Zaks ("Rabbi Mayer" or "Movant") respectfully submits this Pre-Trial Brief to identify and address the main factual and legal issues to be tried at the Evidentiary Hearing on the Contested Issues as set forth in this Court's Order dated March 26, 2020 (the "Evidentiary Hearing Order").[1] *See* ECF No. 17.

## PRELIMINARY STATEMENT

The Court's Evidentiary Hearing Order provides that two Contested Issues are to be tried at the Evidentiary Hearing:

> (1)    Whether the corporate governance of the Reorganized Debtor and the identity of the Reorganized Debtor's Board of Trustees (a) on the Confirmation Date and (b) the post-Confirmation Date transfer of the Property[2] by the Reorganized Debtor were in compliance with the Plan and Confirmation Order; and
>
> (2)    Whether the Confirmation Order approved the Reorganized Debtor's post-confirmation Date transfer of the Property without the requirement of any additional approval under applicable New York law, and, if not, whether such approval was obtained.

Ev. Hearing Order at 4, ECF No. 17.

It must be noted at the outset that the Movant does not dispute that a post-Confirmation sale of the Property was authorized by this Court and approved by the Office of the New York Attorney General in accordance with New York law. Contested Issue (2), which the Movant understands to encompass these concerns, is therefore not the subject of Movant's case. Rather, Movant's case concerns Contested Issue (1)—to wit, that Reorganized Debtor Mosdos Chofetz Chaim Inc.'s ("Mosdos") purported Board of Trustees[3] and corporate governance *were not* in

---

[1]    Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Evidentiary Hearing Order.

[2]    The property is located at 50 Grandview Avenue, Spring Valley, New York, also known as 1-60 Kiryas Radin Drive, Spring Valley, New York 10977, Section 41.20, Block 2, Lot 40. The property was developed as a religious campus, with a synagogue and Yeshiva at its center and adult student housing facilities surrounding.

[3] The Mosdos Board of Trustees is alternatively referred to throughout as "the Board."

compliance with the Plan and Confirmation Order. Indeed, it is Movant's position that, whatever is true of the external approval of the sale, the internal approval process was entirely deficient.

More specifically, as of the Confirmation Date, the Board of Trustees that should have been in place pursuant to applicable New York law was not the Board that purported to make decisions on behalf of Mosdos. This contradicts the terms of the Plan and Confirmation Order, which provide: (i) that Mosdos' Board of Trustees would "remain in place unchanged," Conf. Order, ¶ 30, (ii) that, generally, the Plan is not by any means forbidden by law under 11 U.S.C. § 1129(a)(3), *id.*, ¶ 28, and (iii) that, more specifically, any sale would be in compliance with state law pursuant to 11 U.S.C. § 363(d)(1), *id.* at p. 10. In view of these provisions, the Plan and Confirmation Order did not contemplate or condone the possibility that Mosdos' Board had been, or would be, altered to be in conflict with the relevant provisions of the New York Not-for Profit Corporation Law ("N-PCL") and New York Religious Corporations Law ("RCL"). Yet, this is precisely what occurred when Rabbi Mayer, among other trustees, were surreptitiously excluded from the Board by his brother, Rabbi Aryeh Zaks ("Rabbi Aryeh").

In this regard, at the Evidentiary Hearing the Movant will demonstrate that there are three key deficiencies with the makeup of Mosdos' Board of Trustees and, in turn, its approval process:

(1)    Despite purported changes to the makeup of Mosdos' Board of Trustees over time, there were never any changes that complied with the provisions of the N-PCL and RCL pertaining to the appointment and removal of directors.[4] *See* N-PCL §§ 703, 706; RCL § 195. As a result, the Board of Trustees that was in place pursuant to Mosdos' Certificate of Incorporation was the Board that should have been in place as of the Confirmation Date. To the extent that a different Board made decisions on behalf of Mosdos, any such decisions were legally invalid.

---

[4] As discussed *infra*, Mosdos' trustees are treated as directors under the N-PCL. N-PCL § 102(6).

(2)     Even if it is assumed that changes to the Board of Trustees were permissible, votes taken by this Board of Trustees—including that on the sale of the Property—did not include a sufficient number of Trustees, or otherwise follow applicable approval procedures, and therefore did not comply with the relevant provisions of the N-PCL. N-PCL §§ 509, 510.

(3)     Finally, in either case, under the N-PCL a director must disclose any interest in a transaction put to the directors for approval, and must further abstain from a vote on that transaction. Because Rabbi Aryeh had a personal economic interest in the sale of the Property, he should not have been permitted to vote on the transaction. N-PCL § 715.

For these reasons, as described more fully below, Plaintiffs respectfully request that the Court find that the Reorganized Debtor's corporate governance and the makeup of its Board of Trustees were not in compliance with the Plan and Confirmation Order at the relevant times.

## FACTUAL BACKGROUND

### General Background

Mosdos is a religious corporation organized under Article 10 of the RCL. Cert. of Incorp., Ex. A.[5] Its Certificate of Incorporation ("COI"), dated January 19, 2003, provides that its purpose is to, among other things, maintain a Yeshiva and classes for the instruction of those in the Jewish Orthodox faith in accordance with the teaching of Rabbi Mayer Kagan, known as the *Chofetz Chaim*, of whom Rabbi Mayer and Rabbi Aryeh are descendants. *Id.* Further, Mosdos was to establish and maintain a religious educational campus on which religious services, classes, and lectures would be conducted. *See id.* Mosdos developed the Property, known as 1-60 Kiryas Radin Drive, for that purpose. Mayer Zaks Decl. ¶ 5, ECF No. 50. Prior to the sale, the Property was Mosdos' sole significant asset. *See* Pet., ECF No. 1.

---

[5] References to "Ex. _" are to Movant's exhibits for identification.

3

**Mosdos Incorporation and Founding Trustees, Officers**

In addition to the details noted above, the COI reflects the minutes of an initial organizational meeting, held January 5, 2003, that was attended by "at least six" individuals entitled to vote, including Rabbi Aryeh, who presided. COI, Ex. A. According to the COI, the voting members decided at this meeting to form Mosdos, and elected its founding trustees and officers. *Id.* The founding trustees were: Rabbi Mayer; his wife, Sima Weintraub; Rabbi Aryeh; his wife, Beatrice Waldman; and Berl Shakovin (collectively, the "Founding Trustees"). *Id.* While the COI did not fix a general term for trustees, it provided individualized terms of one to three years for each of the Founding Trustees elected. *Id.* The COI also provided that there must at all times be a minimum of three trustees, and a maximum of nine. *See id.* the COI set the "annual election of Trustees" for December 1 of each year. *Id.*

As for officers, the COI provided that the trustees could elect three to five officers for terms not to exceed three years. *Id.* At the initial meeting, Rabbi Mayer was elected president until the second annual meeting; Shakovin was elected treasurer until the first annual meeting; and Rabbi Aryeh was elected secretary until the third annual meeting. *Id.*

The minutes of the initial meeting as provided for in the COI do not make any reference to by-laws, and no such document was adopted by the new Board of Trustees at that time. *See id.* Sometime after 2003, however, a set of by-laws (the "By-Laws") were drafted that purport to supplement or alter the governance procedures describe in the COI. Ex. A. Of note, the By-Laws establish a procedure for becoming a "Member" of Mosdos, which includes submission of a written application and an interview with the Board of Directors. By-Laws, at p. 4, Ex. D. The By-Laws further establish regular, bi-monthly meetings of the Board of Trustees; create a procedure for calling special meetings of the Board of Trustees; and provide that a quorum constitutes five

4

Trustees. *Id.* at p. 7. Deviating from the COI, the By-Laws also establish September 1 as the date of the annual meeting. *Id.* at p. 5.

The By-Laws were never adopted by the Board of Trustees, and the procedures described therein were not followed. Mayer Decl. ¶ 33.

**Purported Changes to Board of Trustees, Officers After Mosdos' Incorporation**

Despite the COI, the management of Mosdos was, in many respects, less formal in practice. In point of fact, the initial organizational meeting described in the COI did not occur. Mayer Decl. ¶ 7. Rather, the decision to form Mosdos, who should serve as the organization's trustees and officers, and the basic procedures, were all the product of a series of informal discussions between and among the five founding trustees named in the document. *Id.* Though their discussions were informal, it was understood among these individuals that, as the spiritual leader of the Yeshiva, Rabbi Mayer would assume the title of "President" of Mosdos, and that Rabbi Aryeh, who was far more technologically adept and suited to the task, would assume the position of Mosdos' corporate "Secretary." Further, while it was agreed that Berl Sakovin ("Shakovin") would assume the title of treasurer, this was largely honorary as Shakovin was in declining health. He ultimately passed away on December 14, 2003. *Id.*

Over time, certain changes to the makeup of the corporate governance were actually approved by Mosdos' trustees. In and around 2004, Mosdos' founding trustees began searching for construction financing to develop the Property, and ultimately agreed to elect new officers that would be better suited for that project. *Id.* ¶ 8. To that end, Rabbi Mayer and Rabbi Aryeh recruited four individuals to serve as officers: Rabbi Mayer's father-in-law, Munish Weintraub ("Weintraub"), and three congregants, Mark Blisko ("Blisko"), Steven Green ("Green"), and Dr.

5

Jonathan Ginsberg ("Ginsberg"). *Id.* It was also understood that Blisko would, in addition to serving as an officer, serve as a trustee.[6] *Id.*

Though the Board of Trustees accepted these changes, no formal meeting was held at the time when the new officers were elected. Nevertheless, a document surfaced after the fact purporting to memorialize such a meeting on December 11, 2003 ("December 2003 Minutes"). Dec. 2003 Minutes, Ex. B. According to the December 2003 Minutes, the full Board of Trustees was present and accepted the resignation of the original officers, and elected the new officers listed above. However, this meeting never occurred. Indeed, Mr. Shakovin could not have attended, as he was hospitalized and near death at the time. Mayer Decl. ¶ 14.

Similar documents exist that purport to show subsequent meetings of the Board of Trustees to make adjustments to its own makeup, or to that of Mosdos' officers. As with the December 2003 Minutes, however, these documents do not reflect meetings that were actually held. For example, minutes reflecting a meeting held in November 14, 2005 show that Weintraub would continue as president, that Green would continue as secretary, and that Blisko and Ginsburg would continue as trustees. November 2005 Minutes, Def.'s Joint Ex. 17. However, in addition to the fact that the positions are not consistent with those originally assigned—Blisko, and not Green, had previously been named secretary—the minutes are dated *May 2005*—six months prior to the purported date of the meeting. Mayer Decl. ¶¶ 20–21.

Moreover, various documents—including filings with this Court—reflect varying and, in some cases, inconsistent members of the Board of Trustees and officers. For instance, in its bankruptcy case commenced in 2011, Mosdos' Statement of Financial Affairs reflects that Blisko, Weintraub, Rabbi Mayer and Rabbi Aryeh were members of the Board. 2011 SOFA, at 10–11, Ex.

---

[6] The same is true of Green, who testified that he was a member of, but later resigned from, Mosdos' Board, and informed Rabbi Aryeh of his decision to do so orally and possibly in writing as well.

6

K. In the Statement of Financial Affairs filed in the instant case, however, Blisko is excluded despite his status not having changed. Pet., ECF No. 1; Mayer Decl. ¶ 26.

There are an array of such examples. *See, e.g.*, Mayer Decl. ¶15 (describing purposed July 15, 2004 minutes). But despite what is reflected in various documents, Rabbi Mayer understands that he has been on the Board of Trustees since the organization's founding in 2003. He has not resigned, and to his knowledge, has never been removed. *Id.* ¶ 67. The same is true of Rabbi Mayer's wife, Sima Weintraub. *Id.* Though Blisko was not formally appointed, he similarly maintains that he has been on the Board of Trustees since 2004, and, to his knowledge, has never resigned or been removed. *Id.*; *see also* Blisko Decl. ¶ 10, ECF No. 31.

For this reason, the existence and substance of meeting minutes for a meeting allegedly held on September 1, 2018 ("September 2018 Minutes"), are particularly troublesome. *See* Sept. 2018 Minutes, Ex. W. According to this document, Rabbi Aryeh presided over a late Saturday night meeting of Mosdos' Board of Trustees, at which it is claimed that a Board comprised of Rabbi Aryeh, his wife Beatrice Waldman, and his daughter Gittel Layosh, elected to the Board as new trustees Rabbi Aryeh's son, Mendel Zaks; his daughter, Devorah Zaks; and Gittle Layosh's husband, Eliyahu Layosh. Yet, neither Rabbi Mayer nor Sima Weintraub were identified as being present at the meeting, nor were they provided notice that the meeting would occur. *Id.*; Mayer Decl. ¶ 51. Nor, for that matter, was any other member of Mosdos' Board of Trustees or its congregation present or notified. *See* Mayer Decl. ¶ 51.

### **Confirmation of Mosdos' Chapter 11 Plan and Authorization of Sale**

Mosdos commenced the instant chapter 11 case on September 6, 2012, precipitated by an alleged default under mortgages owned, respectively, by CC of R LLC and Avon Group LLC. Pursuant to a settlement approved by this Court pursuant to Orders entered on June 21, 2017, these

7

mortgage liens were consolidated and fixed in the amount of $22,173,784.03, and assigned to TBG Radin LLC ("TBG"). *See* June 21, 2017 Orders, ECF Nos. 226–27. The assignment was in consideration of the sum of $7,290,000, though the payment of this amount did not reduce the amount of the assigned mortgage lien. According to Mosdos' approved disclosure statement, TBG was not an insider of the Debtor. Disclosure Statement, Ex. CC-1.

On October 2, 2019 (the "Confirmation Date"), the Court entered its *Findings of Fact, Conclusions of Law and Order Confirming Second Amended Plan of Reorganization of Mosdos Chofetz Chaim, Inc.* (the "Confirmation Order"), which confirmed the Plan finding that it complied with 11 U.S.C. § 1129—including subsection (a)(3), which requires that the Plan be proposed in good faith and not forbidden by law. Conf. Order ¶¶ 13, 28, ECF No. 308.

Further, the confirmed Plan provides that monthly payments of $125,857 will be made to TBG on account of its recently-acquired secured claim, but "if the Debtor believes it is unable to make payments to the Holder of the TBG Radin Secured Claim," the claim may be satisfied by sale of the Property. Plan ¶ 6.1, ECF No. 283. In the event that a sale is necessary, the Plan provides that it "shall be subject to any necessary approval under section 363(d)(1) of the Bankruptcy Code, including any such approval by the New York Attorney General under New York Religious Corporations Law." *Id.* The Confirmation Order authorizes the Debtor or Reorganized Debtor to sell the Property pursuant to those same requirements. Conf. Order, at 10, ECF No. 308.

The Plan also requires that, absent a sale, "the Debtor will continue in existence post-confirmation as the 'Reorganized Debtor,' and its officers and directors and owner shall remain in place unchanged. The Debtor/Reorganized Debtor *will continue* to be managed by Rabbis Aryeh and Mayer Zaks." Plan ¶ 6, ECF No. 283 (emphasis added). The Confirmation Order mirrors this language, providing that "[t]he Debtor will continue in existence post-confirmation as the

8

Reorganized Debtor, and its officers and directors shall remain in place unchanged. The Debtor/Reorganized Debtor *will continue* to be managed by Rabbis Aryeh and Mayer Zaks." Conf. Order ¶ 30, ECF No. 308 (emphasis added).

### **Transfer of the TBG Mortgage and Sale of Property to Entities Controlled or Affiliated with Rabbi Aryeh**

In connection with the settlement approved by the Settlement, Rabbi Mayer and Rabbi Aryeh agreed on behalf of the Board of Mosdos that the note and mortgage assigned to TBG would be deemed a religious charitable donation and be tax deductible, as it was contemplated that TBG, or its subsequent assignee, would gift both back to Mosdos, leaving the Property free and clear. *See* Mayer Decl. ¶¶ 42, 77. However, this is not what ultimately occurred.

Rather, on September 19, 2019—weeks prior to the Confirmation Date—TBG executed an "Assignment of Mortgage" by which it assigned the TBG note and mortgage to an entity controlled by Rabbi Aryeh, known as Shem Olam LLC ("Shem Olam"). Indeed, the Articles of Incorporation for Shem Olam, which were filed by the New York Department of State on July 29, 2019, identify Rabbi Aryeh as the entity's "organizer," and further provide that Rabbi Aryeh's son, Henoch Zaks ("Henoch"), is the entity's designated agent for service of process. Shem Olam Art. Of Incorp., Ex. AA-1. Despite the prior agreement between Rabbis Mayer and Aryeh and TBG, Rabbi Mayer was not consulted about, nor otherwise made aware of, the fact that this new transfer to Shem Olam had been arranged. *See* Mayer Decl. ¶ 63.

In recognition of the assignment from TBG to Shem Olam, TBG received a Tax Donation Receipt (the "Donation Receipt") from another newly-created entity controlled by Rabbi Aryeh—Chofetz Chaim Inc. ("CCI"), which was formed on March 1, 2020. Tax Receipt, Ex. PP-1; CCI Cert. of Incorp., Ex. Y. The Donation Receipt, which was signed by Rabbi Aryeh, confirmed that

9

TBG received no consideration for the transfer of the note and mortgage. Tax Receipt, Ex. PP-1. It further descirbes Shem Olan as a "disregarded entity" owned by CCI. *Id.*

In addition to arranging the transfer of the TBG note and mortgage to Shem Olam, Rabbi Aryeh, in his capacity as a trustee of Mosdos, also oversaw the sale of the Property to an entity known as Congregation Radin Development, Inc. ("CRDI"). CRDI was formed on March 1, 2020, the same day as CCI.[7]

According to minutes of a meeting of the Mosdos Board of Trustees that occurred on September 1, 2019 ("September 2019 Minutes"), Rabbi Aryeh, Beatrice Waldman, Gittel Layosh and Rabbi Mendal Zaks convened to vote on a sale of the Property to CRDI. Sept. 2019 Minutes, Ex. FF. No notice of this meeting was provided to Rabbi Mayer or Sima Weintraub. Mayer Decl. ¶ 66. The September 2019 Minutes do not reflect that Rabbi Aryeh disclosed his interest in the proposed transfer of the TBG note and mortgage to Shem Olam. Nevertheless, the same Minutes reflect that the members of the Board present at the meeting, including Rabbi Aryeh, voted unanimously to approve the sale. Sept. 2019 Minutes, Ex. FF.

To enable CRDI to purchase the Property, CRDI applied for, and ultimately obtained, a $15,000,000 purchase money mortgage from Sterling Bank ("Sterling"). *See* Ex. TT-1. The sale of the Property to CRDI closed on October 24 and 25, 2019. At that time Sterling wired the $15,000,000, less closing fees and expenses, to Shem Olam's account at Sterling for application against the TBG note and mortgage that Shem Olam had acquired for no consideration. *Id.*

---

[7] The Certificate of Incorporation for CCI provides that the organizational meeting was held at 20 Kiryas Radin Drive—an address that at one time was occasionally used by Rabbi Aryeh as a Sabbath residence, and is currently occupied by his daughter, Devorah Zaks.

10

## ARGUMENT

The Board allegedly in place pursuant to the September 2018 Minutes—Aryeh Zaks, his wife Beatrice Waldman, his daughter Gittel Layosh, as well as the three additional relatives they installed at that time—was not a Board whose makeup was in compliance with New York law. Nor was it a Board that was authorized under New York law to transfer Mosdos' Property. By their terms, the Plan and Confirmation Order could not have authorized the post-confirmation continuation of a Board of Trustees for Mosdos that was out of compliance with applicable state law in this way.

Specifically, as set forth below, the Board purportedly in place wrongfully excluded founding trustees, including Rabbi Mayer, who had not properly been replaced pursuant to N-PCL § 703 and RCL § 195. Alternatively, the Board did not, at a minimum, include a sufficient number of trustees to approve the sale of the Property under N-PCL § 509, or at most comply with the correct procedure under N-PCL § 510. Further, even if the makeup of the Board was not impermissible, the vote on the sale of the Property was inconsistent with N-PCL § 715, which, among other things, bars a vote of interested directors.

### The Founding Trustees Were Never Replaced Under N-PCL § 703 and RCL § 195, and Therefore Could Not be Excluded

As an entity organized under Article 10 of the RCL, Mosdos is subject to both the N-PCL and the RCL. RCL § 2-b(1); *see Nat'l Church of God of Brooklyn, Inc. v. Carrington*, 56 Misc. 3d 1215(a), at *10 (N.Y. Sup. Ct. 2017). In conjunction, the N-PCL and RCL subject Mosdos' trustees to a specific election procedure. Under the N-PCL, Mosdos' trustees constitute directors. *See* N-PCL § 102(6) (defining director to include "any member of the governing board of a corporation," including a trustee). As such, the trustees hold office not only until the expiration of their designated term, but further—"until [a] successor has been elected or appointed and qualified." N-

11

PCL § 703(c); *Machne Menachem, Inc. v. Hershkop*, 237 F. Supp. 2d 227, 240 (E.D.N.Y. 2002) (citing N-PCL § 703(c)).

To appoint a successor, however, requires approval in accordance with RCL § 195, under which a trustee's election *shall* be voted on by at least six (6) individuals deemed "qualified voters." RCL § 195. Relevant here, such qualified voters are comprised of members who are "stated attendants on divine worship . . . and have regularly contributed to the financial support" of the organization. *Id.* In other words, the congregants. *See Carrington*, 56 Misc.3d 1215(a) at *9 (noting that, under RCL § 195, all members of a church are entitled to vote on appointment of new trustees); *see also Kroth v. Congregation Chebra Ukadisha Bnai Israel Mikalwarie*, 105 Misc. 2d 904, 913 (N.Y. Sup. Ct. 1980) (holding, in the sale context, that RCL § 195 requires a congregational meeting).

Here, no such meeting was ever held. Though all of the founding trustees' terms expired by the third year of Mosdos' existence, no congregational meeting was ever held to elect their replacements. As a result, any replacement purported to be elected at the September 2018 meeting is invalid, and the four surviving founding trustees still comprise Mosdos' Board. Notably, for these same reasons, Gittel Layosh's appointment, which appears to have occurred prior to September 2018, is also invalid.

Moreover, it is important to note that neither Rabbi Mayer nor his wife ever resigned, nor were removed from, their respective positions, making a majority vote of directors insufficient to appoint a replacement. *See* N-PCL § 705 (requiring simple majority vote of the remaining directors to fill a vacancy). On the one hand, resignation would have required them to affirmatively surrender their positions, which neither did. *See Hershkop*, 237 F. Supp. 2d at 241. On the other hand, removal must be for cause, and voted on by either the members or a majority of directors.

12

N-PCL § 706. It also requires notice—which neither Rabbi Mayer nor his wife received. *See Hershkop*, at 230–31; *Ellis v. Broder*, 812 N.Y.S.2d 851, 853–54 (N.Y. Sup. Ct. 2006) (holding that removal was invalid absent notice and an opportunity to defend). Absent by-laws outlining a different procedure—and none were adopted here—removal must be in compliance with the procedures outlined in the N-PCL. Failing that, it cannot be effective. *See Hershkop*, 237 F. Supp. 2d at 240–242 (holding that a director that did not affirmatively resign and was not removed in accordance with the N-PCL, retained his position after the expiration of his term).

Apart from making the Board of Trustees facially deficient, the fact that the Board did not comply with the proper appointment procedures of the RCL and N-PCL means that only two of the true, original members of the Board voted on the sale of the Property. As explained below, this does not comply with N-PCL §§ 509 or 510; in turn, the sale of the Property was not in compliance with 11 U.S.C. § 363(d)(1).

### Even if Additional Board Members Are Recognized, the Sale of the Property Did Not Comply with N-PCL §§ 509 or 510

Alternatively, to the extent that trustees added to the Board through various informal procedures are recognized, the Board's vote on the sale of the Property would nevertheless be invalid. A board that recognized all additional members would include not only the four surviving Founding Trustees, but also Blisko, Gittle Layosh, and the three (3) trustees whose election was reflected in the September 2018 Minutes, for a total of nine (9) trustees. However, according to the September 2019 Minutes, only four (4) trustees voted to approve the sale. Even under these circumstances, the Board's approval of the sale was deficient under the relevant provisions of the N-PCL. Indeed, because the Property constituted substantially all of Mosdos' assets, two such provisions may be applied; yet, the Board's approval of the sale meets the requirements of neither.

13

First, under N-PCL § 509, a sale of real property that constitutes all or substantially all of an non-profit entity's assets requires two-thirds (2/3) approval of the entire board. N-PCL § 509. But here, less than half of the board voted on the proposed sale of the Property. This is simply insufficient.

The second provision, N-PCL § 510, is more likely applicable to Mosdos as a religious entity. *See In re Nat'l Council of Young Israel*, 784 N.Y.S.2d 923, 923 (N.Y. Sup. Ct. 2003) (noting that N-PCL § 510 is likely applicable to the sale of real property by most religious corporations). Under N-PCL § 510, where members are entitled to vote on a sale of substantially all of an entity's assets, a board of directors must recommend the proposed sale to those members, who in turn must approve the sale by two-thirds (2/3) vote. N-PCL § 510(a)(1).[8] Accordingly, under this provision, Mosdos' Board of Trustees was not permitted to approve the sale of the Property, but was, at most, able to pass a resolution for submission to its congregants. *See Kroth*, 105 Msic. 2d at 913 (holding that approval of a sale of a religious corporations real property was subject to approval pursuant to RCL § 195, discussed above). Here, however, just as the Mosdos'

---

[8] N-PCL § 510 reads, in relevant part:

> (a) A sale, lease, exchange or other disposition of all, or substantially all, the assets of a corporation may be made upon such terms and conditions and for such consideration, which may consist in whole or in part of cash or other property, real or personal, including shares, bonds or other securities of any other domestic or foreign corporation or corporations of any kind, as may be authorized in accordance with the following procedure:
>
> (1) If there are members entitled to vote thereon, the board shall adopt a resolution recommending such sale, lease, exchange or other disposition. The resolution shall specify the terms and conditions of the proposed transaction, including the consideration to be received by the corporation and the eventual disposition to be made of such consideration, together with a statement that the dissolution of the corporation is or is not contemplated thereafter. The resolution shall be submitted to a vote at a meeting of members entitled to vote thereon, which may be either an annual or a special meeting. Notice of the meeting shall be given to each member and each holder of subvention certificates or bonds of the corporation, whether or not entitled to vote. At such meeting by two-thirds vote as provided in paragraph (c) of section 613 (Vote of members) the members may approve the proposed transaction according to the terms of the resolution of the board, or may approve such sale, lease, exchange or other disposition and may authorize the board to modify the terms and conditions thereof.

14

Board did not submit the election of trustees to its congregants for approval, it did not submit the sale of the Property. Accordingly, the sale of the Property was not validly approved.

Ultimately, the Court need not determine which standard applies, as the Board's approval of the sale met neither. Under those circumstances, the approval of the sale was not compliant with state law, and therefore in violation of 11 U.S.C. § 363(d)(1).

### The Board's Approval of the Sale of the Property Did Not Comply with N-PCL § 715

While the Plan and Confirmation Order give Mosdos the authority to sell the Property without further Court or Attorney General approval, the Property was to be sold only if Mosdos believed it would be unable to satisfy the payment to TBG on account of its secured claim. *See* Plan ¶ 6.1, ECF No. 283. Yet, as of the Confirmation Date, TBG had already executed an assignment of its note and mortgage to Shem Olam for no consideration. As Shem Olam was a self-described "disregarded entity" organized by Rabbi Aryeh, the assignment should have left Mosdos without any justification for the sale under the Plan. Indeed, Rabbi Aryeh could have simply canceled the note and released the mortgage. Instead, however, Rabbi Aryeh proceeded with a sale of the Property, and as a result received approximately $25,000,000 upon the close of the sale ($11,000,000 of which was immediately loaned back to the purchaser, CRDI). Since the sale of the Property was not necessary to satisfy the TBG secured claim, which Mosdos trustee Rabbi Aryeh (as organizer and manager of claim assignee Shem Olam) could simply have released, the only economic purpose of the sale was to transfer $25,000,000 of value into Rabbi Aryeh's pocket.

That Rabbi Aryeh stood to profit from the sale of the Property in this manner made Rabbi Aryeh an interested party to the sale, and his status as such triggered specific obligations under N-PCL. Specifically, under N-PCL § 715, non-profit entities are prohibited from engaging in

15

transactions in which a director or other related party has a financial interest—known as "related party transactions"—unless the interested director discloses to the board the material facts of his interest. N-PCL § 715(a); *see also* N-PCL § 102 (23), (24) (defining "related party" and "related party transaction"). Moreover, the N-PCL prohibits the interested director from participating in either the deliberations or voting related to the transaction in which he has an interest. N-PCL § 715(h).

While Rabbi Aryeh may have disclosed his interest to the individuals present at the September 2019 meeting at which the sale was approved, he did not disclose his interest to the other, true trustees—including Rabbi Mayer. Rabbi Aryeh also participated in, and voted on the sale. This not only casts a shadow over the Board's actions—and Rabbi Aryeh's in particular—it takes those actions out of compliance with the N-PCL, and in turn, with the requirements of the Plan and Confirmation Order.

Accordingly, the Board of Trustees' makeup and actions were deficient in several respects under applicable state law—namely, the approval of the sale was deficient not only in its failure to include the right trustees or to solicit the votes of Mosdos' members, as discussed above, but also in Rabbi Aryeh's failure to exclude himself from the process.

**CONCLUSION**

Based on the above, which Movants will establish at the Evidentiary Hearing, Movants respectfully request that the Court find that the Reorganized Debtor's purported Board of Trustees and corporate governance were not in compliance with the Plan and Confirmation Order, either because the makeup of the Board as of the Confirmation Date did not comport with applicable state law or because the Board's approval of the sale of the Property was otherwise deficient.

Dated: September 2, 2020

           Respectfully submitted,

           OTTERBOURG P.C.

           By: /s/ Melanie L. Cyganowski
               Melanie L. Cyganowski, Esq.
               Stanley L. Lane, Jr., Esq.
               Michael R. Maizel, Esq.
               230 Park Avenue
               New York, New York 10169
               (212) 661-9100
               mcyganowski@otterbourg.com
               slane@otterbourg.com
               mmaizel@otterbourg.com

           *Attorneys for Rabbi Mayer Zaks*

           *-and-*

           TWERSKY PLLC

           By: /s/ Aaron Twersky
               Aaron Twersky, Esq.
               Ilana Neufeld, Esq.
               747 Third Avenue, 32nd Floor
               New York, New York 10017
               (212) 425-0149
               atwersky@twerskylaw.com
               ineufeld@twerskylaw.com

           *Attorneys for Plaintiffs*