Kevin J. Nash, Esq.
Goldberg Weprin Finkel Goldstein LLP
1501 Broadway, 22nd Floor
New York, NY 10036
Telephone: (212) 221-5700
*Attorneys for Defendant Rabbi Aryeh Zaks*

**Michael Levine, Esq.**
**LEVINE & ASSOCIATES, P.C.**
15 Barclay Road
Scarsdale, NY 10583
Telephone (914) 600-45288
*Litigation Attorneys for Mosdos Chofetz Chaim, Inc.,*
*Defendant/Reorganized Debtor*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| In re: | : Chapter 11 |
| **MOSDOS CHOFETZ CHAIM INC.,** | Case No. 12-23616(rdd) |
| | : **Post-Confirmation** |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| MOSDOS CHOFETZ CHAIM INC., RABBI MAYER ZAKS, derivatively on behalf of MOSDOS CHOFETZ CHAIM INC., SIMA WEINTRAUB, derivatively on behalf of MOSDOS CHOFETZ CHAIM INC., DANIEL ROSENBLUM, derivatively on behalf of MOSDOS CHOFETZ CHAIM INC., JOSEPH GRUNWALD, derivatively on behalf of MOSDOS CHOFETZ CHAIM INC., and YISROEL HOCHMAN, derivatively on behalf of MOSDOS CHOFETZ CHAIM INC., | : : : : : Adv. Pro. No. 20-08949-rdd |
| Plaintiffs, | : |
| - against- | : |
| MOSDOS CHOFETZ CHAIM INC., CHOFETZ CHAIM INC., TBG RADIN LLC, SHEM OLAM LLC., CONGREGATION RADIN DEVELOPMENT INC., ARYEH ZAKS, BEATRICE WALDMAN ZAKS, HENOCH ZAKS, MENDEL ZAKS, GITTEL ZAKS LAYOSH, SAMUEL MARKOWITZ and STERLING NATIONAL BANK, | : : : : |
| Defendants. | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**DEFENDANTS MOSDOS CHOFETZ CHAIM INC.'S AND RABBI**
**ARYEH ZAKS' MOTION FOR IN LIMINE RELIEF**

Defendants Mosdos Chofetz Chaim Inc. ("Mosdos") and Rabbi Aryeh Zaks, hereby move this Court for an Order *in limine* prohibiting Rabbi Mayer Zaks from (i) presenting any evidence regarding the configuration of the Board of Trustees of Mosdos based upon Movant's litigation misconduct comprised of theft of evidence and spoliation of evidence; alternatively, (ii) prohibiting Movants from presenting the testimony of Mark Blisko or any other evidence of the composition of the Mosdos Board of Trustees based upon the fraud surrounding the Blisko Declaration; (iii) precluding the testimony of certain non-party witnesses and (iv) preclude the entry into evidence of the late-filed Declaration of Rabbi Mayer Zaks.[1]

The Motion is based upon the Certification of Henoch Zaks and Michael Levine, both dated September 1, 2020.

## I. RABBI MAYER ZAKS' AGENT'S BURGLARY OF THE PROPERTY OF DEFENDANT CRD AND THE THEFT OF DOCUMENTS, ELECTRONIC FILES AND VIDEOS BELONGING TO DEFENDANT RABBI ARYEH ZAKS RELEVANT TO DEFENDANTS' DEFENSES IN THIS ACTION WARRANTS DISMISSAL OF THIS CASE

As described in the accompanying Declaration of Henoch Zaks, on two separate occasions, Joseph Tzvi (a/k/a Tzvika) Zaks, the son of Rabbi Mayer Zaks, physically broke into the office of Rabbi Aryeh Zaks in a building owned by Defendant CRD, cut the wires to the existing surveillance systems, and stole (i) a hard drive containing, *inter alia*, archival files and videos of meetings of Mosdos' Board of Trustees and officers, and (ii) physical documents that were the property of Rabbi Aryeh Zaks. The conduct (repeated on two separate occasions), and the subsequent cover-up attempts, is so outrageous in character and scope, and so prejudicial to the

---

[1] Defendants and Movant have each objected to several exhibits that the other seeks to offer into evidence. Those objections are not addressed herein, as it is assumed that the Court will review the same and make rulings. If the Court wishes any written submissions of on any of those objections, Defendants are happy to do so.

Defendants, that preclusion of Movant's ability to present evidence at the hearing (the equivalent

of dismissal) is not only warranted, but the only realistic remedy that would (i) redress this

outrageous conduct constituting an affront to the process of this Court, and (ii) alleviate the

prejudice to Defendants resulting therefrom.

There is no question that, under its inherent powers, a district court may sanction a party

for wrongfully obtaining the property or confidential information of an opposing party. *See*

*Jackson v. Microsoft Corp.*, 211 F.R.D 423, 430-32 (W.D. Wash. 2002), aff'd 78 Fed. App'x 588

(9th Cir. 2003); *Fayemi v. Hambrecht and Quist, Inc.*, 174 F.R.D. 319, 323-25 (S.D.N.Y. 1997)

(M.J.); *Ashman v. Solectron Corp.*, 2008 U.S. Dist. LEXIS 98934, 2008 WL 5071101, *2 (N.D.

Cal. 2008) (unpublished); *cf. United States v. Shaffer Equip. Co.*, 11 F3d 450, 461 (4th Cir 1993)

["Due to the very nature of the court as an institution, it must and does have an inherent power to

impose order, respect, decorum, silence, and compliance with lawful mandates.  This power is

organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all

other powers." (citing *Chambers v. NASCO, Inc.*, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991)].[2]

Courts have significant discretion in fashioning an appropriate sanction for judicial misconduct,

and dismissal should be imposed "when a party … abuses the process at a level that is utterly

inconsistent with the orderly administration of justice or undermines the integrity of the process

…" *Shaffer Equip.*, 11 F.3d at 462; and *see Rangarajan v. Johns Hopkins Univ.*, 917 F3d 218,

229 (4th Cir 2019) ["when a party 'abuses the process at a level that is utterly inconsistent with

---

[2]  The *Shaffer* Court went on to state that "[u]nder the inherent power, a court may issue orders,
punish for contempt, vacate judgments obtained by fraud, conduct investigations as necessary to
exercise the power, bar persons from the courtroom, assess attorney's fees, and dismiss actions,"
however it cautioned that "[s]ince orders dismissing actions are the most severe, such orders must
be entered with the greatest caution."

the orderly administration of justice or undermines the integrity of the process' … she forfeits her right to use the process"].

The *Shaffer* Court enunciated six areas of consideration before a court exercised its inherent power to dismiss a case.[3] They are: (1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney …; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest. 11 F3d at 462-463.

In *Ehrenhaus v. Reynolds*, 965 F.2d 916, the Tenth Circuit announced similar considerations for a determination of dismissal for litigation misconduct (albeit in the context of violation of a discovery order). The *Ehrenhaus* guidelines were: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the

---

[3] The Second Circuit, in *Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1365 (2d Cir. 1991), stated that courts possess "wide discretion" in imposing sanctions (albeit in the context of a rule 37 motion for failing to comply with a discovery order). However, the Second Circuit has imposed two limitations upon a district court's discretion in imposing sanctions: (i) "the sanctions must be 'just[,]'" and (ii) "the sanction must relate to the particular claim to which the discovery order was addressed." *Id.* at 1366 (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites*, 456 U.S. 694, 707, 102 S. Ct. 2099, 72 L. Ed. 2d 492 (1982)). Although there is no Second Circuit case that we could locate that directly adopted the specific *Shaffer* considerations, the case has been cited with approval (in the context of a spoliation of evidence issue) by at least one Southern District Case (*Cat3, LLC v. Black Lineage, Inc.*, 164 F Supp 3d 488, 498 [SDNY 2016]) (Magistrate-Judge James C. Francis IV) ["A party's falsification of evidence and attempted destruction of authentic, competing information threatens the integrity of judicial proceedings even if the authentic evidence is not successfully deleted"] and the *Shaffer* guidelines appear to be a reasonable roadmap for deliberation on the issue of dismissal for litigation abuses in the instant case.

litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction; and (5) the efficacy of lesser sanctions.[4]

Although, again, we have been unable to find any Second Circuit decision specifically adopting the *Ehrenhaus* guidelines, some New York bankruptcy and district court decisions have articulated similar guidelines and/or cited *Ehrenhaus* with approval.  For example, in *McHale v. 1-15 Hartsdale Ave. Corp. (In re 1031 Tax Group, LLC)*, 2010 Bankr LEXIS 2369, at *15-16 [Bankr SDNY July 16, 2010, Nos. 07-11448 (MG), 09-01215 (MG)]), Judge Glenn observed:

> In the exercise of discretion to issue sanctions, particularly more extreme sanctions like entering a default judgment and dismissing the case, courts consider a variety of factors, such as: "(a) willfulness or bad faith of the noncompliant party; (b) the history, if any of noncompliance; (c) the effectiveness of lesser sanctions; (d) whether the noncompliant party had been warned about the possibility of sanctions; (e) the client's complicity; and (f) prejudice to the moving party." *Am. Cash Card Corp. v. AT&T Corp.*, 184 F.R.D. 521, 524 (S.D.N.Y. 1999) (citing Jodi Golinsky, The Second Circuit's Imposition of Litigation-Ending Sanctions for Failure to Comply with Discovery Orders, 62 BROOK. L. REV. 585, 596-97 (1996)). *See also Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992) (enumerating substantially similar factors a court should consider before dismissing an action as a discovery sanction).

And in *American Cash Card Corp. v AT&T Corp.*, 184 FRD 521, 524 [SDNY 1999]), Judge Chin, after annunciation the above-stated considerations, further stated:

> Courts must also consider competing policy considerations: the need for general deterrence and docket control versus the preference for resolving cases on their merits. *See*, e.g., *National Hockey League*, 427 U.S. at 643; *Henry v. Gill Indus., Inc.*, 983 F.2d 943, 948 (9th Cir. 1993) (district courts must consider, inter alia, public's interest in expeditious resolution of litigation, court's need to manage its docket, and preference for disposing of cases on their merits); *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1068 (2d Cir. 1979) ("In this day of burgeoning, costly and protracted litigation courts should not shrink from imposing harsh sanctions where … they are clearly warranted.").

---

[4]  The Court made clear that "[t]hese factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction."  965 F2d at 921.

Although not specifically referring to the *Shaffer* or *Ehrenhaus* guidelines, the inherent power to dismiss for egregious misconduct during the course of a litigation has been recognized by many courts of appeals throughout the country. *See Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989) [recognizing the inherent power to dismiss where a party "defiles the judicial system in committing a fraud on the court"]; *Halaco Engineering Co. v. Costle*, 843 F.2d 376, 380 (9th Cir. 1988) [recognizing the inherent power to dismiss for discovery abuses, but reversing dismissal order as excessive in the circumstances]; *United States v. National Medical Enterprises, Inc.*, 792 F.2d 906, 912 (9th Cir. 1986) [recognizing the inherent power to dismiss for government's improper influencing of trial witnesses, but reversing dismissal order for district court to reconsider pursuant to the "appropriate legal standard"]. In *National Medical Enterprises*, the court confirmed its standard that dismissals under the inherent power are justified if "a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." 792 F.2d at 912 (quoting *Fjelstad v. American Honda Motor Co.*, 762 F.2d 1334, 1338 [9th Cir. 1985]).

Many district court opinions have dealt with situations where a party stole property or information from an adversary and considered whether dismissal was warranted in such circumstances. Although none of those cases invoked the exact same factors articulated in *Shaffer or Ehrenhaus*, their analyses revolved around the same basic principles. For example, in *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 432 (W.D. Wash. 2002), the plaintiff, a former Microsoft employee suing for discrimination, obtained thousands of documents – including trade secrets and material covered by the attorney-client privilege – from a former supervisor's computer without permission. (211 F.R.D. at 425-27). The plaintiff also acquired Microsoft personnel records and emails that were widely distributed among Microsoft employees, and physically altered some hard

5

copies of emails in his possession to obscure who had provided them to him. (*Id.*). Plaintiff failed to disclose his possession of this information for ten months and repeatedly gave untruthful answers under oath about how he obtained and used these documents. (*Id.* at 425-30). The court concluded that the plaintiff's conduct was in bad faith, "egregious in the extreme," and that the document theft alone would suffice to warrant dismissal. (*Id.* at 431). The court went on to hold that, considering the plaintiff's theft and dishonesty, dismissal was appropriate because he had undermined the "truth-finding function of the court," and "no sanctions … would cure plaintiff's extensive access to [Microsoft's] privileged and confidential materials and … would assure plaintiff's honesty in the proceedings to come." (*Id.* at 432).[5]

Similarly, in *Perna v. Elec. Data Sys. Corp.*, 916 F. Supp. 388, 392-93 (D.N.J. 1995), a plaintiff surreptitiously rifled through and copied documents in defendants' counsel's briefcase. The court found that the plaintiff acted with "a willful and improper design" (*Id. at 399-402*) and accepted the magistrate-judge's recommendation granting the motion to dismiss the offending plaintiff's claim because the plaintiff's actions constituted the type of willful and extreme conduct that warranted dismissal and any lesser sanction would not sufficiently condemn and deter such outrageous conduct, which threatened the integrity of the judicial system. (*Id.*).

Similarly, in *Fayemi v. Hambrecht and Quist, Inc.*, *supra*, the plaintiff obtained purportedly confidential documents about his former employer's employee bonus structure by, without permission, entering his supervisor's office and printing documents from either the supervisor's computer or a disk the supervisor kept in his office. (174 F.R.D. at 321-24). Considering only

---

[5] And see *Lipin v. Bender*, 193 AD2d 424, 428 (1st Dept 1993) [dismissal was granted where a plaintiff improperly copied documents belonging to her adversary's attorney because "it is not unduly harsh to expect and indeed to require that civil litigants gather the information needed to prosecute or defend their actions in conformity with the applicable CPLR provisions" (citing *In re Beiny*, 129 A.D.2d 126, 517 N.Y.S.2d 474 [1st Dept. 1987]).

two factors, "the severity of the wrongdoing and the prejudice to the adversary," Magistrate-Judge

Francis held that dismissal would be too drastic because the stolen information probably would

have been disclosed during discovery and there was insufficient prejudice to the employer-

defendant to warrant dismissal.[6]  (*Id.* at 325-26).  Rather, the sanction of precluding the plaintiff

from using the wrongfully obtained information sufficed to "prevent the plaintiff from benefiting

from his wrongdoing and … ameliorate any prejudice to the defendants."[7]

Where courts have determined that a lesser sanction than dismissal was more appropriate,

it was usually based on two factors: (i) that the conduct was not so egregious that it went to the

heart of the judicial process, and (ii) the prejudice to the other side could be ameliorated by a lesser

sanction.[8]  *See Spencer v. Pottstown Sch. Dist.*, 292 F Supp 3d 635, 643 (ED Pa 2018) [in

determining whether to dismiss, the court should consider "the severity of the wrongdoing and the

---

[6]  Other Courts have used these two criteria in determining whether dismissal is warranted.  See, for example, *Spencer v. Pottstown Sch. Dist.*, 292 F. Supp 3d 635, 643 [ED Pa 2018] (citing *Fayemi*).

[7]  In the end, the Court refused to impose any sanctions because of the employer-defendant's "unclean hands." *Fayemi*, 174 F.R.D. at 326-27.  As discussed in more detail below, in the matter at bar the stolen information would have be "disclosed during discovery" because (notwithstanding that Plaintiffs' agent stole the same from Rabbi Aryeh Zaks' office), Plaintiffs have responded to discovery demands "representing" that they were purportedly not in possession of any documents, videos, files or ESI regarding Mosdos Trustees' meetings – the *very materials* that they stole. Clearly, they are neither going to return the stolen materials nor have they produced them in discovery.

[8] Typically, where there is a lack of prejudice conclusion it is based on the findings that the materials that were improperly obtained (i) did not result in the destruction of the materials, (e.g., her the materials obtained were obtained via copying or transmission of electronic versions of the same, and did not result in the inability of the other side to access them), and (ii) the materials would have been produced in discovery by the person or entity from which they were improperly obtained.  While the latter element is clearly present in the matter at bar, the former is just as clearly not.

prejudice to the adversary."]. In *Glynn v. EDO Corp.*, 365 F. Supp. 2d 595 (Dist. of Maryland 2008), the court imposed monetary sanctions instead of dismissing the case because the offending parties' misconduct was limited to a "handful of ... documents" and the documents likely would have been produced in discovery, meaning any prejudice would have been cured.[9] And in *Ashman, supra*, 2008 U.S. Dist. LEXIS 98934, 2008 WL 5071101, at *4; *Fayemi, supra*, 174 F.R.D. at 326, the courts arrived at similar conclusions upon finding that a lesser sanction would mitigate any prejudice.

Here, using the general guidelines articulated by the courts mandate outright dismissal. Plaintiffs' conduct demonstrates egregious bad faith, willfulness, and fault, and Defendants have been prejudiced in that they have no means by which they can recreate the hard-copy documents, nor the videos and electronic files on the hard drive that was stolen (and now, admittedly, destroyed) by Movant. Many of the documents are highly relevant to the defense of Plaintiffs' claims, which establishes that Plaintiffs sought to gain an unfair advantage in this lawsuit by burglarizing one of the Defendants' offices and absconding with the materials.[10] Allowing Movant to present evidence of his claim would reward his agent's improper conduct without sufficiently remedying Defendants' prejudice. Preclusion of presenting any evidence is the least severe

---

[9] 2010 U.S. Dist. LEXIS 86013, 2010 WL 3294347, at *6.

[10] *See*, e.g., *Rhodes*, 2005 U.S. Dist. LEXIS 43505, 2005 WL 281221, at *5 [dismissing plaintiff's claims as a sanction because plaintiff circumvented the rules governing discovery by improperly obtaining proprietary documents belonging to her opponent before the start of litigation, the documents plaintiff obtained were relevant to her lawsuit, and defendant was prejudiced by not having an opportunity to contest the production of the documents]. Here, the conduct is even more egregious because documents and videos necessary for Defendants' defense to this action have been stolen and destroyed.

effective sanction available to adequately cure Defendants' prejudice, deter similar future misconduct, and punish Movant's wrongdoing.[11]

Using, as a guide, the five so-called *Ehrenhaus* factors to determine the appropriate sanction to impose against Movant makes clear that complete preclusion is appropriate here. As set forth above, those factors (which are generally the same or similar considerations used by most courts) are: "(1) the degree of actual prejudice to the opposing party, (2) the degree of interference with the judicial process, (3) the litigant's culpability, (4) whether the litigant was warned in advance that dismissal was a likely sanction, and (5) whether a lesser sanction would be effective." (*LaFleur v. Teen Help*, 342 F.3d 1145, 1151 (10th Cir. 2003) (citation omitted). "These factors do not constitute a rigid test." *Ehrenhaus,* 965 F.2d at 921. They instead present a "flexible framework," under which dismissal is appropriate when "'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 921).

In evaluating these five factors, the court should, it is respectfully submitted, remain mindful that any eventual sanctions should adequately punish Movant's misconduct, remedy the prejudice to and harm suffered by Defendants and the judicial process, deter future litigants from engaging in this type of misconduct, and engender public trust in the integrity of the judicial proceedings.[12]

---

[11] See 2005 U.S. Dist. LEXIS 43505, [WL] at *2 ("[L]itigants who play by their own rules 'will find that the game cannot be won.'" (quoting United States v. Golden Elevator, Inc., 27 F.3d 301, 302 (7th Cir. 1994))).

[12] *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 46, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) [stating that inherent power sanctions are meant to vindicate judicial authority]; *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S. Ct. 2778, 49 L. Ed. 2d 747 (1976)

## 1. Prejudice

The court should first consider "the degree of actual prejudice to the opposing party."

*LaFleur*, 342 F.3d at 1151. Here, Movant has not only obtained materials owned by Rabbi Aryeh

Zaks and Defendant Mosdos, but they have actually stolen the only copies of those documents

(either in hardcopy or electronic format) that Defendants had access to. Moreover, Movant has

stolen a hard drive containing video recordings that are highly probative on the Contested Issues

to be tried before this Court (as well as on the underlying claims in the Adversary Proceeding

itself). While Defendants do not have an index of all of the documents and videos on that hard

drive, they know that the same contained, among other things, irretrievable videos of meetings of

the Board of Trustees of Mosdos (reflecting the identities of the members of the same), and video

recordings of (at least) the persons coming to those meetings. While there is no claim that those

---

[sanctions are intended "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent"); *Lee v. Max Int'l*, 638 F.3d 1318, 1320 (10th Cir. 2011) [ "district courts must have latitude to use severe sanctions for purposes of general deterrence" (citation and internal quotation marks omitted)]; *Positive Software Solutions, Inc. v. New Century Mortg.*, 619 F.3d 458, 460 (5th Cir. 2010) [sanctions are designed "to preserve the authority of the court" (citation and internal quotation marks omitted)); *Zapata Hermanos Sucesores, S.A. v. Hearthside Baking Co.*, 313 F.3d 385, 390 (7th Cir. 2002) [federal courts have inherent authority "to punish misconduct"]; *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 733 (9th Cir. 1995) ["The proper use of sanctions that are within the court's inherent power is to protect the court so it may adequately dispense justice"]; *Philips Elecs. N. Am. Corp. v. BC Technical*, 773 F. Supp. 2d 1149, 1196 (D. Utah 2011) [sanctions are intended to "redress conduct that abuses the judicial process … to ensure that the judicial process is not abused," and "to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth" (citation and internal quotation marks omitted)]; *Fayemi v. Hambrecht & Quist, Inc.*, 174 F.R.D. 319, 325 (S.D.N.Y. 1997) ["A court considering the appropriate sanction to impose on a party that has wrongfully obtained evidence should weigh two factors: the severity of the wrongdoing and the prejudice to the adversary."]; *In re Shell Oil Refinery*, 143 F.R.D. 105, 108 (E.D. La. 1992) (inherent power sanctions should "remedy litigation practices that threaten judicial integrity and the adversary processes").

documents are necessarily sensitive or confidential, they are unquestionably probative of essential issues before this Court, corroborative of Defendants' position in this case (and its presentation at the scheduled Evidentiary Hearing), and, most importantly, gone.[13]

Indeed, while there is no question that some of the materials stolen by Movant's agent are irrelevant to the claims in this lawsuit, many others are highly relevant and likely would have been produced by Defendants in discovery and used at the Evidentiary Hearing.[14] Defendants have been prejudiced by Plaintiffs' unauthorized possession and concealment or destruction of this information. It is certainly prejudicial to steal an opposing party's critical materials without authorization and then destroy (or hide) them so that the opposing party cannot use them in the litigation; thereby gaining for the thief an unfair advantage.[15] Indeed, that is the very kind of

---

[13] That is especially problematic in this case because Movant has submitted several Direct Witness Certifications that allege that a certain Board to Trustees meeting, which took place on September 1, 2018, allegedly never took place. Video recordings from that date would be critical to dispel that issue without the necessity of a he said-she said determination.

[14] Among those materials stolen were also some concerning Rabbi Aryeh Zaks' personal and confidential dealings, such as loans he made, charity/gifts he has given, his personal investments, and the like. Those materials are confidential and sensitive not only to Rabbi Aryeh Zaks but to the non-party recipient/beneficiary of the charity and loans. Indeed, it was likely part of Plaintiff's motivation in committing the burglary to attempt to uncover "dirt" on Rabbi Aryeh Zaks to force his hand in settling this matter on terms beneficial to Plaintiff Rabbi Mayer Zaks.

[15] Even if Plaintiffs argue that they, somehow, had the legal right break into and burglarize Rabbi Aryeh Zaks' office to obtain the materials that they stole, they certainly did not (and do not) have the right to destroy or conceal those materials from Defendants, especially when the same go to the heart of this litigation. *See*, e.g., *Jackson v. Microsoft Corp.*, *supra*, 211 F.R.D. at 432 [finding that defendant had "been prejudiced in its ability to fairly defend itself in the litigation" because some of the documents that plaintiff improperly obtained went "directly to the heart of [the] litigation"]. Similarly, if Plaintiffs argue that they would have gotten the materials in discovery in any event, that argument blows past the rules governing discovery and the parties' right to a neutral forum for resolving discovery disputes. Litigants do not enjoy an unobstructed right to obtain any documents they want. A party's ability to obtain discovery is restrained by the standards laid out in the Federal Rules and applicable case law applying those Rules. But, even if they would have

prejudice that permits the Court to exercise its inherent powers to entire preclude evidence on claims of the offending parties.

## 2. *Interference with the Judicial Process*

The court should next consider "the degree of interference with the judicial process." *LaFleur*, 342 F.3d at 1151. Movant clearly interfered with the judicial process by circumventing the Federal Rules of Civil Procedure, including those governing discovery, breaking a lock on the door of an opposing party's office, cutting the wires to an existing surveillance system, stealing probative evidence, and concealing or destroying that evidence.

There exists an implicit agreement and promise that those who come to the courts to seek help resolving disputes will play by the established rules. That promise means little if the public cannot confidently expect that the disputes presented in the courts will be decided according to well-established and carefully designed rules uniformly applied to all parties, in all lawsuits. Movant disregarded this basic notion. He did not play by the rules, but rather leapt over them, bypassing the judicial process, and harming a party's opportunity to properly and completely present its case and its evidence. And in doing so, he undermined Defendants' confidence in these proceedings, and the public's confidence in the fairness of judicial proceedings in general. These are important matters. Movant's conduct deprived the court of the chance to fulfill its fundamental obligation to ensure the integrity of these proceedings. He has significantly interfered with the judicial process.

---

gotten the materials in discovery, that does not permit them to engage in self-help methods nor to destroy or conceal those materials to the detriment of Defendants.

### 3. Culpability

The third factor is "the litigant's culpability." *LaFleur*, 342 F.3d at 1151. As an initial matter, Movant's misconduct (breaking into and stealing materials from an adversary's office) unquestionably demonstrates willfulness, bad faith, and fault. Rabbi Mayer Zaks' son did so specifically to either gain an unfair advantage for Rabbi Mayer Zaks (undoubtedly hoping that he would obtain materials helpful to his father's position), or to disadvantage Defendants in the litigation (by removing materials that Defendants could use to support their claims or defenses in this lawsuit).

The person who broke into Rabbi Aryeh Zaks' office was Rabbi Mayer Zaks' son, and he was driven to the office by Rabbi Mayer Zaks, and met with Mayer Zaks' wife before the break-in. He was, unquestionably, acting at Rabbi Mayer Zaks' direction, and, equally certainly, Rabbi Mayer Zaks approved and participated in the theft and ultimate concealment or destruction of the materials. He frequently, as he did in this instance, uses family members to do his bidding. There is no question that he was behind the break-in of his adversary's office, and the theft and destruction of relevant evidence.

Coupled with Movants' actions are his inactions. He has taken the position that he is purportedly *not* in possession or control of any documents or videos reflecting the identity of the Mosdos Board of Trustees, or any meetings of the same, and that only Rabbi Aryeh Zaks is in possession of such materials. Unambiguously, by taking that position, Rabbi Mayer Zaks has made it clear that he does not intend to produce *any* of the materials his agent stole and has falsely represented that he does not possess any such information and he has in fact produced none, all for the purpose of gaining an advantage in this litigation.

13

This conduct establishes that Rabbi Mayer Zaks made a calculated decision to illegally obtain materials from Rabi Aryeh Zaks' office for strategic use or concealment in this litigation. This shows a high level of culpability.

### 4. Advanced Warning

The next factor is "whether the litigant was warned in advance that dismissal was a likely sanction." *LaFleur*, 342 F.3d at 1151. Movant did not receive any advanced warning before his agent broke into the office of Rabbi Aryeh Zaks and stole relevant and probative materials to gain an advantage in this litigation. The Court had no opportunity to warn Rabbi Mayer Zaks as to that, given that neither the Court nor the Defendants were aware that Movant would resort to illegal conduct to further his interests in this litigation. Nonetheless, the absence of a warning is not dispositive.[16]

### 5. Efficacy of a Lesser Sanction

Lastly, the court must determine "whether a lesser sanction would be effective." *LaFleur*, 342 F.3d at 1151. Here, Defendants seek complete preclusion so the Court must consider whether lesser remedies would be sufficient.

#### a. *Dismissal*

Dismissal (which, for all intents and purposes in the equivalent of complete preclusion) is "an extreme sanction" and "should be used as a weapon of last, rather than first, resort."" *Ehrenhaus*, 965 F.2d at 920 (citing *Meade v. Grubbs*, 841 F.2d 1512, 1520 (10th Cir. 1988)). And "[o]nly when the aggravating factors outweigh the judicial system's strong predisposition to

---

[16] See *Rogers v. Andrus Transp. Servs.*, 502 F.3d 1147, 1152 (10th Cir. 2007) ["a warning is not a *sine qua non* for dismissal"]; *Ehrenhaus*, 965 F.2d at 922 (a "court should ordinarily consider and address all of the [] factors before imposing dismissal as a sanction," "often some of the[] factors will take on more importance than others"].

14

resolve cases on their merits is dismissal an appropriate sanction." As stated above, in evaluating whether there is an effective yet lesser sanction than dismissal, the court must consider whether the lesser sanction would remedy the harm to Defendants and the judicial process, whether it would deter future misconduct by Movant and future litigants, and whether it would appropriately punish Plaintiffs. Those lesser sanctions could be preclusion of the use of the stolen documents by Plaintiffs, a direction to return the stolen materials, or monetary sanctions.

### b. *Exclusion of Stolen Documents*

As it relates to Movant's claims, the mere exclusion of the stolen documents (without the sanction of complete preclusion) would not be effective to redress the prejudice to Defendants or the affront to the processes of this Court. The materials Movant caused to be stolen are materials necessary to prepare and support *Defendants'* defenses and claims. Merely excluding the documents would *bolster* Plaintiffs' claims (to the *detriment* of Defendants) and send a message that a litigant can circumvent the discovery process (and the law) to improperly obtain evidence, use that evidence to support its claims (if the evidence does so), withhold that evidence (if it supports the other side's claims), and then maintain its claims even if its misconduct is uncovered. Any lesser sanction than complete preclusion here "would be an open invitation to abuse the judicial process because litigants would infer they have everything to gain and nothing to lose by trying to lie, cheat, and abuse the orderly rules of discovery and lawful conduct."[17]

### c. Return of the Stolen Materials

While a direction to return the stolen materials might suffice, there cannot be any realistic confidence that an order to return those materials to the defendant would be fully honored. If, for

---

[17] *Rhodes v. Lasalle Bank, N.A.*, 2005 U.S. Dist. LEXIS 43505, [WL] at *5 (N.D. Ill. 2005) (citation omitted) (internal quotation marks omitted).

example, Movant owns up to the theft and return all but the most important documents and/or

return a partially scrubbed hard drive, Defendants would be placed in the untenable position of a

"he said-she said" argument about whether there has been a full return, with no realistic manner in

which they could prove the existence of the unreturned materials. Defendants should not be placed

in that position as a result of the wrongdoing of Movant.[18]

### d. Monetary Sanctions

Monetary sanctions are appropriate when the misconduct does not rise to the extreme

nature that warrants complete preclusion and when the prejudice has been or can be mitigated

through other means. For instance, the court in *Glynn v. EDO Corp.* imposed monetary sanctions

instead of dismissing the case because plaintiff obtained a mere "handful of ... documents" by

improper means and there was no evidence that plaintiff "expressly requested" that defendant's

current employee provide him the documents. Here, however, Movant did not passively receive a

mere handful of documents – he had his agent steal an entire hard drive and *all* the hard-copy

---

[18] Determining whether there is any likelihood that the destroyed evidence would have been of
the nature alleged by the wronged party "is unavoidably imperfect, inasmuch as, in the absence of
the destroyed evidence, we can only venture guesses with varying degrees of confidence as to what
that missing evidence may have revealed." *Kronisch v. United States*, 150 F3d 112, 127 (2d Cir
1998). "Indeed, holding the prejudiced party to too strict a standard of proof regarding the likely
contents of the destroyed evidence would subvert the prophylactic and punitive purposes of the
adverse inference, and would allow parties who have intentionally destroyed the evidence to profit
from that destruction." *Id.* at 128. *Kronisch* went on to hold that some evidence was required to
corroborate the relevancy and contents of the destroyed evidence, but that circumstantial evidence
was sufficient. *Id.* That is because "the risk that the evidence would have been detrimental rather
than favorable should fall on the party responsible for its loss." *Turner v. Hudson Transit Lines,
Inc.*, 142 F.R.D. 68, 75 (S.D.N.Y. 1991). "Where a party destroys evidence in bad faith, that bad
faith alone is sufficient circumstantial evidence from which a reasonable fact finder could conclude
that the missing evidence was unfavorable to that party." *Residential Funding Corp. v. DeGeorge
Fin. Corp.*, 306 F3d 99, 109 (2d Cir 2002); *Kronisch*, 150 F.3d at 126 ["a party's intentional
destruction of evidence relevant to proof of an issue at trial can support an inference that the
evidence would have been unfavorable to the party responsible for its destruction."].

documents he could find. A monetary sanction would simply not sufficiently punish or deter this misconduct. It would signal that litigants can circumvent the discovery process, steal documents, withhold them from their adversaries, and still pursue their claims so long as they pay a fine.

Also, a monetary sanction would not cure the prejudice to Defendants because they would still be unable to use the materials in their defense. They would be forced to defend Movant's claims despite Movant's unfair advantage.

### e. Summary

Federal courts are forums for adverse parties to resolve disputes. The fair resolution of those disputes depends on the parties' compliance with the rules and standards that govern litigation. These rules and standards – derived from the Federal Rules of Civil Procedure, the court's inherent powers, and the standards of professional conduct – aim to make federal court litigation just, efficient, and ethical. They form a structured process designed to uncover the truth. And when a party fails to comply with these basic rules and standards, it is within the court's power to impose sanctions against the offending party.

Here, Movant circumvented the rules and standards governing discovery when his agent burglarized (or caused to be burglarized) an office belonging to Defendants, stole hardcopy documents and a hard drive containing materials necessary to the Defendants' defense in the upcoming Evidentiary Hearing, and then denied being in possession of any such materials; all to gain an unfair advantage in this case. Movant specifically undertook an illegal and improper course of action to gain a strategic litigation advantage against his adversaries. His conduct most closely resembles that of the plaintiffs in the *Microsoft*, *Perna*, and *Lipin* cases cited above. In each of those cases, the plaintiff specifically undertook an illegal and improper course of action to gain a strategic litigation advantage against its adversary. In each of those cases, that conduct

17

resulted in dismissal of the plaintiffs' complaint for misconduct of the sort which took place in the matter at bar. If anything, the conduct here is even more egregious than the conduct leading to dismissal in those cases; it is quite simply civil vigilantism. It is the act alone that offends justice and the Court.

Indeed, at bar we have precisely the sort of bad faith misconduct that the Court has the power – and, it is respectfully submitted, the obligation – to sanction in order to preserve the integrity of these proceedings and engender the public's trust in the judicial process. Allowing Movant's misconduct to go unpunished would injure the judicial system and provide future litigants with an incentive to raid their potential opponents' offices to achieve an end-run around the rules governing the just resolution of disputes. Movant has committed serious sanctionable misconduct, and this Court should not ignore the incongruity of permitting a litigant, who has attempted to thwart the fair and efficient administration of justice to further his own purposes, to seek to vindicate his interests in the same forum he has attempted to undermine. Absolute preclusion in this matter are not only appropriate, but imperative to ensure the legitimacy and fairness of this Court's processes.

Defendants have been prejudiced by not being able to use highly relevant documents in their defenses because Plaintiffs caused the same to be stolen and then hidden or destroyed. Some of the stolen documents (e.g., Rabbi Aryeh Zaks' personal materials) were likely wholly irrelevant to this lawsuit –showing that Plaintiffs would not have obtained them if they sought them through proper discovery channels – while others are entirely relevant to this lawsuit – showing that Plaintiffs sought to gain an unfair advantage in this case. Plaintiffs' misconduct has also undermined the court's ability to resolve disputes regarding the stolen materials that might arise (e.g., whether the non-relevant items are discoverable, etc.). Anything short of complete

18

preclusion will fail to remove the taint that Movant has caused and fail to adequately deter future litigants from engaging in this type of illegal self-help. And allowing Movant to pursue his claims would send a message to other litigants that they have much to gain and little to lose by taking their potential opponents' property using improper means. Here, complete preclusion sanctions are not merely punitive but restorative and prophylactic because Movant's actions both threatened and abused the integrity of the judicial process. Complete preclusion is the only means at the disposal of this Court which adequately addresses the injury to both the Defendant and to the integrity of judicial process itself which has been exacted by Movant's deliberate, lawless, and unilateral actions.

## II. **PLAINTIFFS ARE GUILTY OF SPOLIATION OF IMPORTANT EVIDENCE AND, AS SUCH, THE SHOULD BE COMPLETELY PRECLUDED FROM PRESENTING EVIDENCE**

Separate and apart from the gross misconduct discussed above – Movant's agent's burglarizing of Rabbi Aryeh Zaks' office and their theft of highly relevant materials therefrom – Movant's subsequent destruction of that evidence provides a separate basis for preclusion in this case. Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (citation omitted); Black's Law Dictionary 1401 (6th ed. 1990). It has long been the rule that spoliators should not benefit from their wrongdoing, as illustrated by "that favorite maxim of the law, *omnia presumuntur contra spoliatorem.*" 1 Sir T. Willes Chitty, *et al.*, Smith's Leading Cases 404 (13th ed. 1929); and *see Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998). It has been condemned in language evocative of Old Testament fury: "The law, in hatred of the spoiler, baffles the destroyer, and thwarts his iniquitous

19

purpose, by indulging a presumption which supplies the lost proof, and thus defeats the wrongdoer by the very means he had so confidentially employed to perpetrate the wrong." *Pomeroy v. Benton,* 77 Mo. 64, 86 (1882) (quoted in *Turner v. Hudson Transit Lines, Inc.*, 142 F.R.D. 68, 74 [S.D.N.Y. 1991].

A federal court may impose sanctions under Fed. R. Civ. P. 37(b) upon a party who engages in spoliation in derogation of court order.[19]  See Fed. R. Civ. P. 37(b)(2); *Beers v. GMC,* 1999 US Dist LEXIS 12285, at *11 (NDNY May 17, 1999, 97-CV-482) (citing, *inter alia, John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.*, 845 F.2d 1172, 1176 (2d Cir. 1988).  Even in the absence of a discovery order, the court "may impose sanctions for spoliation, exercising its inherent power to control litigation." *Id.*; and *see Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991); *Sassower v. Field*, 973 F.2d 75, 80-81 (2d Cir. 1992), cert. denied, 507 U.S. 1043, 113 S. Ct. 1879, 123 L. Ed. 2d 497 (1993); *see also* P.L. McGlynn, Note, Spoliation in the Product Liability Context, 27 U. Mem. L. Rev. 663 (1997).

"The district court possesses 'broad discretion in crafting a proper sanction for spoliation' but such sanction is to 'serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine' (*Beers*, 1999 US Dist LEXIS 12285, at *11 [citing *West*, 167 F.3d at 779],

---

[19] Some courts are reluctant to rely on Rule 37 in spoliation cases (*see Capuelluo v. FMC Corp.*, 126 F.R.D. 545 [D. Minn. 1989]), preferring to address the destruction of evidence by using their inherent supervisory power "to regulate litigation, preserve and protect the integrity of the proceedings before [them], and sanction parties for abusive practices." *Turner*, 142 F.R.D. at 72; *see also Chambers v. Nasco, Inc.*, 501 U.S. 32, 46, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991) [rules of civil procedure "are not substitutes for the inherent power" to sanction litigants]. Other courts have noted that "the Court's analysis appears to be the same when considering sanctions pursuant to its inherent powers as it is when considering sanctions pursuant to Fed. R. Civ. P. 37(b)." *Jackson*, 211 F.R.D. at 431 n.7 (citing *Toth v. Trans World Airlines, Inc.*, 862 F.2d 1381, 1385 [9th Cir. 1988]); accord *Webb v. District of Columbia*, 189 F.R.D. 180, 185 (D.D.C. 1999) ["as the Court of Appeals noted, the appropriate standard under either the rules of civil procedure or the Court's inherent powers is essentially the same."].

"and is assessed on a case-by-case basis" (*Fujitsu Limited v. Federal Express Corp.*, 247 F.3d 423, 436 [2d Cir. 2001] [citing *West*, 167 F.3d at 779]). "This sanction is fashioned to: '(1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore the prejudiced party to the same position he would have been in absent the wrongful destruction of evidence by the opposing party.'" *Beers*, quoting *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998).

"Outright dismissal of a lawsuit … is within the court's discretion." *Id.* (quoting *Chambers*, 501 U.S. at 45). Dismissal is proper if there is "a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *Id.*, at *13 (quoting *West*, 167 F.3d at 779, which cited *Jones v. NFTA*, 836 F.2d 731, 734 (2d Cir. 1987)). Dismissal is not limited only to matters where the offending party has acted with bad faith or willful intent but is permitted where there is any fault of the sanctioned party. *Id.*, (citing *Bobal v. Rensselaer Polytechnic Institute*, 916 F.2d 759, 764 [2d Cir. 1990]).[20]

The Second Circuit has also directed that in fashioning a sanction, the court must take into account the ability of the sanction to "restore the prejudiced party to the same position he would

---

[20] In this Circuit, a showing is not required that the spoliator acted in bad faith. In *Turner*, 142 F.R.D. at 76, Magistrate Judge Francis held (in the context of an adverse inference request) that "the evidentiary imbalance caused by the spoliation does not depend on that party's intent; therefore, bad faith, while a significant consideration, should not be an absolute prerequisite …." In *Reilly v. NatWest Mkts. Group Inc.*, 181 F3d 253, 267-8 (2d Cir 1999]), the Second Circuit (also in an adverse inference context) observed that hiding evidence "occur along a continuum of fault – ranging from innocence through the degrees of negligence to intentionality," and held that "a finding of bad faith or intentional misconduct is not a *sine qua non* to sanctioning a spoliator …" And in *Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F3d 93, 109 (2d Cir 2001), the Second Circuit noted that the "culpable state of mind" factor is satisfied by a showing that the evidence was destroyed "knowingly, even if without intent to [breach a duty to preserve it]."

have been in absent the wrongful destruction of evidence by the opposing party." *Id.* (citing *West*, 167 F.3d at 779).

As Defendants' defense here revolves around evidence of the configuration of Mosdos Board of Trustees, and the changes thereto over the years, evidence of the configuration (through resolutions, voting, attendance at meetings, etc.) is vital to the presentation of Defendants' case. Such evidence is necessary to overcome the original position set forth in Mayor Zaks' original Declaration, *to wit* that there has purportedly been no change to the Mosdos Board of Trustees since 2003, or alternatively, that no meeting took place on September 1, 2018. Here, a lesser sanction than complete preclusion is, it is respectfully submitted, inappropriate to redress Movant's spoliation of evidence. Only complete preclusion serves the three prongs the *West* panel enumerated as to the purposes of Rule 37 and spoliation.[21] First, it will serve as a deterrent to Movant and non-parties from engaging in spoliation. Second, the risk of an erroneous judgment will be on the party to lose the critical evidence. Third, it appears no other sanction will restore Defendants to the position they would have been in absent the spoliation.

For those reasons, complete preclusion a dismissal resulting from Plaintiff's intentional spoliation is appropriate and necessary here.

## III. THE COURT'S ORDER DIRECTING AN EVIDENTIARY HEARING ON PLAINTIFFS' MOTION FOR CONTEMPT WAS BASED ON A DECLARATION OF MARK BLISKO THAT WAS SURROUNDED BY FRAUD

From its very inception, the rationale advanced by Plaintiffs for the necessity for Court intervention on their motion to hold rabbi Aryeh Zaks in contempt was, as demonstrated in the

---

[21] *West*, 167 F.3d at 779; and *see Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988); 7 James Wm. Moore, Moore's Federal Practice § 37.50[1][a], at 37-72, 37-73 (1998); Jamie S. Gorelick et al., Destruction of Evidence § 3.14, at 111 (1989).

accompanying Declaration of Michael Levine, Esq., based upon what appears to be internationally fraudulent circumstances and a subsequent cover-up attempt.   The salient portion of that Declaration represented that Mark Blisko was a Trustee of Mosdos and did not participate in any vote to approve the sale of Mosdos' property (which sale had already been approved by this Court). Movant originally recanted that representation, claiming that the same was "an error."  However, after a conference before this Court from which it could have been inferred that such recantation could lead to summary dismissal (because this Court's decision to schedule an evidentiary hearing was based, almost entirely, on that "erroneous" Declaration, the story shifted yet again.[22]  For the reasons set forth in, and the exhibits attached to, the accompanying Affirmation, the Movant should be precluded from presenting the testimony of Mark Blisko or any other evidence of the composition of the Mosdos Board of Trustees based upon the fraud surrounding the Blisko Declaration.

## IV.  <u>The Direct Examination Declarations of Several Witnesses Should be Stricken</u>

A few days before the scheduled Evidentiary Hearing, Movant disclosed a list of witnesses, the identities of many of which were never previously disclosed.  In the afternoon of September 2, 2020, Movant submitted Direct Examination Declarations of those "witnesses."   What is clear from first read of these submissions, it is not the sale of the subject Property that is being complained of, it is the subsequent donation of the TBG Radin secured claim to another religious entity, and *not* to Rabbi Mayer Zaks.  That is what this fight has been about from the beginning, *not* whether this Court's Order has been complied with (which it clearly has).

---

[22] Moreover, as is also demonstrated above, that "error" was the harbinger of even worse abuses of the judicial process involving, among other things, the burglarizing, by a son of Rabbi Mayer Zaks, the offices of Rabbi Aryeh Zaks, stealing documents and an entire hard drive therefrom, and then falsely pretending to not have of the stolen documents (or, worse, having destroyed the same).

The witness direct certifications that Rabbi Mayer Zaks seeks to present to this Court go primarily to two issues: (i) that the persons praying at the synagogue do not like it that the purchaser did not donate the debt to a Rabbi Mayer Zaks controlled entity, and (ii) that Rabbi Mayer Zaks is the "head rabbi" of the Yeshiva (and a great guy to boot). But those issues – particularly what happened *after* the Property was sold pursuant to this Court's Order is of absolutely no consequence to the Contested Issues and an attempt by Rabbi Mayer Zaks to divert the Court's a attention from those issues. The following should be precluded from testifying for the following reasons:

**Daniel Rosenblum** – This witness does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the Mosdos Board of Trustees. The salient portion of his Declaration is that he was 50 Kiryas Radin Drive from 10:00 pm to 1:00 am on September 1, 2010 (when a Trustees meeting took place) and did not see Rabbi Aryeh Zaks or his family there. Not only is that completely irrelevant to the issue of the identity of the Trustees of Mosdos, but the direct evidence of that meeting – the videotape – is one of the items on the hard drive stolen by Rabbi Mayer Zaks' son. His testimony should be precluded.

**Joseph Grunwald** – This witness does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the Mosdos Board of Trustees. This witness also claims that he was at 50 Kiryas Radin Drive from on September 1, 2010 (when a Trustees meeting took place) and did not see Rabbi Mayer Zaks or his children present. Again, not only is that completely irrelevant to the issue of the identity of the Trustees of Mosdos, but the direct evidence of that meeting – the videotape – is one of the items on the hard drive stolen by Rabbi Mayer Zaks' son. His testimony should be precluded.

**Nochum Zev Brody** – This witness (Mayer Zaks' son -in -law) does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the Mosdos Board of Trustees.  This witness asserts that Rabbi Mayer Zaks is the "senior" Rabbi of the congregation that this witness attends (Yeshiva Chofetz Chiam), a fact completely irrelevant to the corporate management of Mosdos.  He further asserts that at 50 Kiryas Radin Drive from on September 1, 2010 (when a Trustees meeting took place) and did not see Rabbi Aryeh Zaks or his children present.  Again, Not only is that completely irrelevant to the issue of the identity of the Trustees of Mosdos, but the direct evidence of that meeting – the videotape – is one of the items on the hard drive stolen by Rabbi Mayer Zaks' son.  His testimony should be precluded.

**Thomas E. Walsh II** – This witness does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the Mosdos Board of Trustees.  This witness discusses his relationship with Rabbi Mayer and Aryeh Zaks' father, and his "understanding" that Rabbi Mayer Zaks is the "lead rabbi." He further speaks of the "moral character" of Rabbi Mayer Zaks.  This testimony is completely irrelevant to the Contested Issues before this Court and the testimony should be precluded.

**Bent Philipson** – This witness does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the Mosdos Board of Trustees.  This witness asserts that Rabbi Mayer Zaks is the "spiritual leader" of the synagogue and discusses attempts he made to buy the TBG Radin note.  That is completely irrelevant to this Evidentiary Hearing and his testimony should be precluded.

**Chasia Lehv** – This witness does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the

25

Mosdos Board of Trustees. This witness submits a hearsay declaration stating that she was not aware that her husband was ever appointed as a Trustee of Mosdos. Her knowledge of that is not relevant and her testimony should be precluded.

**David Gewirtzman** – This witness does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the Mosdos Board of Trustees. This witness asserts that Rabbi Mayer Zaks was the Rabbi of "our congregation." That testimony is irrelevant to the issues before this Court.

**Ezra Beyman** – This witness asserts that he was asked to become a Trustee of Mosdos but was never elected or appointed to that position and never attended any meeting. However, he speculates that, *had* he been so elected or appointed, he would not have voted to removed Rabbi Mayer Zaks from the Board. That testimony is irrelevant and should be precluded.

**Eliezer Zelman** – This witness does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the Mosdos Board of Trustees. This witness asserts that Rabbi Mayer Zaks if the lead rabbi of "our congregation." That testimony is irrelevant and should be precluded.

**Johny Melohn** – This witness does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the Mosdos Board of Trustees. This witness asserts that Rabbi Mayer Zaks is the spiritual head "to whom all of the students and people came to resolve their spiritual concerns …" That is completely irrelevant to the issues before this Court and, as such, his testimony must be stricken.

**Ron Henig** – This witness does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the Mosdos Board of Trustees. This witness did work on the building located at 50 Kiras Radin Drive

from 2008 through 2015 and states that the project was known to him as the "Mosdos Chofetz Chaim Project." He further states that Rabbi Mayer Zaks arranged for payments to be made to him for his work. That is completely irrelevant to the issues before this Court and, as such, his testimony must be stricken.

**Gershom Alexander** – This witness does not profess to be a member of the Mosdos Board of Trustees, nor an officer of Mosdos, nor have any direct knowledge of the configuration of the Mosdos Board of Trustees. This witness asserts that Rabbi Mayer Zaks was the "head rabbi at the synagogue." That is completely irrelevant to the issues before this Court and, as such, his testimony must be stricken.

## V.   The Direct Examination Declarations of Rabbi Mayer Zaks should Be Stricken

This Court's prior Order directed that all witness direct declarations be filed by noon today. Because of the number of witnesses, that process took from about 12:02 pm to 12:31 pm. The Direct Declarations of Rabbi Aryeh Zaks and the other Defendant's witness were filed at 12:31 pm. However, although almost all other Direct Declarations of Movant's witnesses were filed by that time, the declaration of Rabbi Mayer Zaks was not filed until 1:53 pm, almost **an hour and a half _after_** Rabbi Aryeh Zaks' Declaration was filed. Rabbi Mayer Zaks had that hour and a half to modify his Declaration to address the matters raised by Rabbi Aryeh Zaks. Although the Declaration itself is a rambling diatribe on irrelevant matters (and should be stricken for that reason alone), it appears (on first read) that certain sections of the same were altered to respond to Rabbi Aryeh Zaks Declaration after it was submitted. It is not unusual that Rabbi Mayer Zaks makes his own rules, but he should not be able to get away with that. His late-filed Declaration should be stricken in its entirety.

27

## CONCLUSION

For the reasons set forth herein and in the accompanying declaration and Affirmation, it is respectfully submitted that this Court should issue an Order *in limine* (i) prohibiting Movant from presenting any evidence regarding the configuration of the Board of Trustees of Mosdos based upon Movant's litigation misconduct comprised of theft of and spoliation of evidence; alternatively, (ii) prohibiting Movants from presenting the testimony of Mark Blisko or any other evidence of the composition of the Mosdos Board of Trustees based upon the fraud surrounding the Blisko Declaration; (iii) precluding the testimony of certain non-party witnesses as hereinafter described, and (iv) precluding the entry into evidence of the late-filed Declaration of Rabbi Mayer Zaks.

**Levine & Associates, P.C.**

By: s/ Michael Levine
       Michael Levine

15 Barclay Road
Scarsdale, NY  10583
Telephone (914) 600-4288
Facsimile (914) 725-4778
e-mail: ml@LevLaw.org
*Attorneys for Defendant Mosdos*

**Goldberg Weprin Finkel Goldstein LLP**

By:  s/Kevin J. Nash
      Kevin J. Nash, Esq.

1501 Broadway, 22nd Floor
New York, NY 10036
Telephone: (212) 221-5700
*Attorneys for Defendant Rabbi Aryeh Zaks*