KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP
200 West 41st Street, 17th Floor
New York, NY 10036
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
Brendan M. Scott
tklestadt@klestadt.com
bscott@klestadt.com

*Attorneys for Congregation Radin Development, Inc.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| MOSDOS CHOFETZ CHAIM INC, | Case No. 12-23616-(RDD) |
| Debtor. | |
| MOSDOS CHOFETZ CHAIM INC., et al., | Adversary Proceeding No. 20-08949-(RDD) |
| Plaintiffs, | |
| -against- | |
| MOSDOS CHOFETZ CHAIM INC., *et al.* | |
| Defendants. | |

**EMERGENCY MOTION OF CONGREGATION RADIN DEVELOPMENT, INC. FOR ENTRY OF AN ORDER (i) HOLDING RABBI MAYER ZAKS IN CONTEMPT FOR WILLFUL VIOLATION OF THE COURT'S MARCH 26, 2020 ORDER, (ii) <u>AWARDING DAMAGES AND (iii) ENJOINING FURTHER VIOLATIONS</u>**

TO:  HONORABLE ROBERT D. DRAIN,
     UNITED STATES BANKRUPTCY JUDGE

Congregation Radin Development, Inc. ("CRDI"), files this emergency motion (the "Motion") for entry of an order (i) holding Rabbi Mayer Zaks in contempt for his willful violation of the Court's March 26, 2020 "*Order (a) Denying Plaintiff's Motion for Remand, or Alternatively, For Appointment of a Receiver and (b) Issuing Injunctive Relief Pending Determination of Contested Issues*" ("March 26 Order") [Adv. Proc. Docket No. 17], (ii) awarding damages against Rabbi Mayer Zaks for his willful violation of the March 26 Order, (iii) directing Rabbi Mayer Zaks to immediately arrange for the removal, at his own cost by a licensed and insured contractor, of an illegal walkway that he had installed without the consent of CRDI at the property owned by CRDI and located at 50 Grandview Avenue, a/k/a 1-60 Kiryas Radin Drive, New Hempstead, New York 10977 in the Town of Ramapo (the "CRDI Property"), and (iv) enjoining Rabbi Mayer Zaks, during the pendency of this action from (a) taking any action related to the CRDI Property without the prior written permission of CRDI, and/or (b) interfering in any manner with the payment of rent from any tenants on the CRDI Property. In support of its Motion, CRDI respectfully sets forth as follows:

**PRELIMINARY STATEMENT**

Rabbi Mayer Zaks has brazenly ignored the Court's directives that the parties maintain the "status quo" on many occasions. Most recently (on November 19, 2020), without the consent of CRDI, the owner of the CRDI Property, Rabbi Mayer Zaks authorized the construction of a paved walkway on the CRDI Property without obtaining the required building permits from the Town of Ramapo. As a direct result of the illegal construction of the paved walkway, the Town of Ramapo has issued two building code violations against the CRDI Property. While the construction was ongoing on November 19, 2020, CRDI, through counsel, informed Rabbi Mayer

2

Zaks' counsel that the work must stop because it had not been authorized by CRDI, and moreover because it was illegal and not permitted by the Town of Ramapo.

In typical fashion, and consistent with his belief that he has the right to do whatever he wants on CRDI's property, Rabbi Mayer Zaks first created a story that the paved walkway was a long anticipated part of another project (the "Mikva Project") which had recently been concluded on the CRDI Property, and falsely suggested that the construction work had been permitted by the Town of Ramapo as part of that project. When CRDI disputed that the paved walkway was part of the Mikva Project and pointed out that the paved walkway was not contained in any of the site drawings that had been filed with the Town of Ramapo, Rabbi Mayer Zaks, through counsel, essentially asked what the harm was in letting the work continue and who could possibly complain about building a paved walkway. CRDI responded that the obvious harm is that illegal construction often results in code violations, as it did in this instance. Rabbi Mayers Zaks ignored the warnings that his conduct would subject the CRDI Property to code violations, and was unmoved by CRDI reminding him that this Court had directed the parties to maintain a status quo. Rabbi Mayer Zaks violated the March 26 Order by unilaterally approving the construction of an unpermitted and illegal walkway on the CRDI Property, and his contemptuous conduct has directly resulting in the assessment of building code violations against the Property.

Additionally, in direct violation of the March 26 Order, Rabbi Mayer Zaks has also continued to instruct numerous tenants on the CRDI Property that they should withhold rent and not make payments to CRDI. As a result, past due rent in the aggregate amount of more than $200,000 is presently owed by various tenants on the Property and continues to accrue each month. So that the Court fully understands the issue, the tenants of the CRDI Property have never before refused to pay rent that was due, and they largely want to continue to pay rent. But Rabbi

Mayer Zaks instructed tenants that they should not pay rent. *See* Declaration of Henoch Zaks, dated December 10, 2020 ("Henoch Zaks Declaration"), ¶9. Rabbi Mayer Zaks' actions have engendered two distinct problems. First, because of the existing COVID-19 restrictions on evictions, CRDI cannot commence any eviction proceedings. Secondly, these are religious students who are willing to pay their rent, but who are fearful of what Rabbi Mayer Zaks might do if they pay their rent. .From a moral standpoint, CRDI is reluctant to commence any eviction action against the students under those circumstances.

Similarly, Rabbi Mayer Zaks has also interfered in the ongoing leasing of other apartments on the CRDI Property. In one instance, on the day a new tenant moved into a vacant apartment, Rabbi Mayer Zaks called the new tenant to inform him that the apartment he had moved into was Rabbi Mayer Zaks' apartment and that he (the prospective tenant) would be deemed a thief in the community if he stayed in the apartment. The tenant moved out almost immediately as a result of Rabbi Mayer Zaks' interference, leaving the apartment vacant.

CRDI had hoped to avoid filing this Motion, but as a result of Rabbi Mayer Zaks' most recent conduct relating to the walkway, Court intervention is now needed to remedy Rabbi Mayer Zaks' interference and prevent any further prejudice to CRDI's rights.

## JURISDICTION

1. This Court has jurisdiction over this Motion under 28 U.S.C. §§ 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue of these proceedings and this Motion is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

2. The statutory bases for the relief requested herein are § 105(a) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rule 9020 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

4

## BACKGROUND

3. On September 6, 2012, Mosdos Chofetz Chaim, Inc. (the "Debtor") commenced a chapter 11 bankruptcy case.

4. In the bankruptcy case, a plan of reorganization (the "Plan") proposed by the Debtor was confirmed by order entered on October 2, 2019 (the "Confirmation Order").

5. Thereafter, on October 24, 2019, the CRDI Property (then owned by the Debtor) was sold (the "Sale") by the Debtor to CRDI pursuant to the Plan and Confirmation Order.

6. On October 25, 2019, the above captioned Plaintiffs commenced the instant action by summons with notice and a notice of pendency in the Supreme Court for the State of New York.

7. On or about February 6, 2020, the Debtor, as a defendant, filed a notice of removal (NYCEF Doc. No. 51).

8. On March 6, 2020, the above captioned Plaintiffs filed "Plaintiff's Motion for (a) Remand, or Alternatively, For Appointment of a Receiver and (b) Issuing Injunctive Relief Pending Determination of Contested Issues." [ECF Docket No. 6]

9. The Court subsequently entered the March 26 Order. The March 26 Order provided in part as follows:

> Ordered, that this Court's prior direction to the parties to maintain the status quo as it existed as of December 17, 2019 (the date of the last hearing before the Court in this Chapter 11 case) shall remain in force until the "Evidentiary Hearing" (as defined below).

10. Shortly after March 26, 2020, it became apparent that Rabbi Mayer Zaks had no intention of complying with the March 26 Order when numerous tenants continued to not pay rent based upon his instructions or advice. *See* Henoch Zaks Declaration, ¶¶ 6-9.

11. Additionally, in one instance, when a new tenant moved into a vacant apartment on the Property, Rabbi Mayer Zaks called the new tenant on the very day he moved into the

5

apartment to falsely tell him that the apartment "belonged" to Rabbi Mayer Zaks and that he (the tenant) would be viewed as a thief in the community if he remained in the apartment. *See* Henoch Zaks Declaration, ¶ 10.  The tenant moved out almost immediately as a result of Rabbi Mayer Zaks' harassment. *See* Henoch Zaks Declaration, ¶ 10.

12. Although Rabbi Mayer Zaks conduct is egregious and continuing, CRDI had hoped it could avoid burdening the Court with this motion.  However, on the morning of November 19, 2020, a construction company appeared on the CRDI Property unannounced and began constructing a paved walkway, purportedly on Rabbi Mayer Zaks' authority.  When CRDI was notified as to this unauthorized modification to its property, a representative was sent to the site and demanded that the construction company leave.  Rabbi Mayer Zaks' son, Shimon Zaks, was on site while the work was being performed, and he assured the contractor that the construction work had been authorized "by the property owner." *See* Henoch Zaks Declaration, ¶ 17; see also Declaration of Mayer Zaks[1], dated December 10, 2020, ¶ 12.  As a result of Shimon Zaks' misrepresentations, the construction company refused to leave the CRDI Property, and the police were called. *Id.*  However, the police stated that they believed the dispute was civil in nature, and indicated there was nothing they could do to stop the construction. *Id.* Prior to leaving the CRDI Property, the police indicated that they would contact the building inspector to investigate the ongoing construction. *Id.*

13. When it became apparent that the police would not be able to assist in stopping the construction, CRDI, through counsel, immediately contacted counsel for Rabbi Mayer Zaks to demand that the construction cease.  *See* Declaration of Brendan M. Scott, dated December 10, 2020 ("Scott Declaration"), ¶ 3 and Exhibit A.  .A copy of the correspondence between Rabbi

---

[1] Mayer Zaks is the nephew of Rabbi Mayer Zaks.

6

Mayer Zaks' counsel and CRDI's counsel is collectively annexed to the Scott Declaration as Exhibit A.

14. Rabbi Mayer Zaks refused to intervene and disingenuously took the position that the "congregation" had arranged for the paving, that a donor had made arrangements with the paving contractor, and that the paved walkway was part of the larger Mikva Project that had recently been completed. *See* Scott Declaration, Exhibit A. He also falsely suggested that the paved walkway had been properly permitted as part of the Mikva Project, and was authorized prior to the time that CRDI became the owner of the Property. *See* Scott Declaration, Exhibit A. His attorneys absurdly suggested that CRDI would be the party in breach of the status quo if it sought to interfere with or attempted to stop construction of the illegal walkway. *See* Scott Declaration, Exhibit A.

15. Admittedly, the idea of adding a paved walkway was raised for the first time a few weeks prior to November 19, 2020, but CRDI did not consent to the construction and instead authorized the installation of a gravel walkway, which did not require permits from the Town of Ramapo. *See* Henoch Zaks Declaration, ¶ 15.

16. CRDI's counsel asserted to Rabbi Mayer Zaks' counsel that Rabbi Mayer Zaks' story was untrue and that the paved walkway had not been permitted by the Town of Ramapo or authorized by CRDI or anyone else. *See* Scott Declaration, Exhibit A. Rather than agree to cease the construction while the issue regarding permits was resolved, Rabbi Mayer Zaks insisted that the illegal paving job be completed. *See* Scott Declaration, Exhibit A.

17. As a direct result of Mayer Zaks' unauthorized construction on CRDI's Property, two building code violations were assessed by the Town of Ramapo on November 23, 2020. *See* Henoch Zaks Declaration, ¶ 18. A copy of the building code violations is annexed to the Henoch

7

Zaks Declaration as Exhibit B. Although the Town of Ramapo mistakenly identified the Debtor as the owner of the Property in the Notice of Violation, the tax lot number is accurately referenced in the Notice of Violation, and CRDI will be the party responsible for clearing the violations as the deeded owner of the Property.

18. On November 24, 2020, CRDI's counsel again contacted Rabbi Mayer Zaks' counsel to inform them that the Town had issued building code violations as a result of the installation of the paved walkway, and to request that Rabbi Mayer Zaks confirm that he would remove the illegal walkway to clear the violations. Counsel for Rabbi Mayer Zaks did not respond substantively to CRDI's request that the walkway be removed. Instead, counsel engaged in a typical game of misdirection, and disingenuously suggested that the building code violations were not a problem because the town mistakenly identified the Debtor as the CRDI Property owner in the Notice of Violation. *See* Scott Declaration, Exhibit A.

19. On December 4, 2020 the Town delivered a Violation Notice, which indicated that the violations must be abated within 10 days or the property owner shall be subject to prosecution. *See* Henoch Zaks Declaration, ¶ 18. A copy of the Violation Notice is annexed to the Henoch Zaks Declaration as Exhibit B.

20. The status quo as of December 17, 2019 indisputably did not include Rabbi Mayer Zaks having the authority to thereafter unilaterally approve illegal, unpermitted construction on the CRDI Property. Nor did it include Rabbi Mayer Zaks having authority to approve any construction on the CRDI Property without the permission of CRDI, the actual and deeded owner of the CRDI Property.

21. Prior to the time that the installation of the paved sidewalk was completed on November 19, 2020, Rabbi Mayer Zaks' counsel incredibly claimed that any effort by CRDI to

8

stop the construction would constitute a violation of the Court's March 26 Order. Now that installation of the paved sidewalk has been completed (albeit illegally), CRDI anticipates that any efforts by CRDI to remove the walkway will be met with more grandstanding and more nonsensical allegations that CRDI's removal of the illegal walkway would constitute a violation of the March 26 Order. For that reason, CRDI seeks entry of an emergency order directing Rabbi Mayer Zaks to arrange for the immediate removal of the walkway at his own expense.

22. The conduct of Rabbi Mayer Zaks in causing the construction of an illegal walkway on CRDI's Property without CRDI's consent, and then refusing to halt construction when directed by CRDI to do so is unquestionably violative of the March 26 Order, and a contempt Order against Rabbi Mayer Zaks is more than warranted. To put his conduct in context, on two occasions, he obtained an eleventh-hour "emergency" adjournment of the scheduled evidentiary hearing in this matter; then, in the interim adjournment period, he has acted as if he has the sole ability to dictate what happens to the CRDI Property which he does not own. The March 26 Order was specifically intended to prevent exactly this type of unilateral action. CRDI has adhered to that status quo Order (often to its economic detriment) while Rabbi Mayer Zaks has flaunted the status quo on numerous occasions. It is respectfully submitted he must be found to be in contempt for his conduct.

## RELIEF REQUESTED AND BASIS FOR RELIEF

23. By this Motion, CRDI seeks entry of an order (i) holding Rabbi Mayer Zaks in contempt for his willful violation of the March 26, 2020 Order, (ii) directing Rabbi Mayer Zaks to immediately arrange for the removal, at his own cost by a licensed and insured contractor, of the illegal walkway on the CRDI Property, and awarding damages against Rabbi Mayer Zaks for his willful violation of the March 26 Order, and (iii) enjoining Rabbi Mayer Zaks, during the pendency

9

of this action from (a) taking any action related to the CRDI Property without the prior written permission of CRDI and/or (b) interfering in any manner with the payment of rent from any tenants on the CRDI Property.

### A. Rabbi Mayer Zaks Should be Held in Contempt for Violation of the March 26 Order

24.     Section 105(a) of the Bankruptcy Code grants bankruptcy courts broad statutory authority to enforce their own orders and the Bankruptcy Code's provisions either under the specific statutory language of the Bankruptcy Code or under equitable common law doctrines. Section 105(a) of the Bankruptcy Code provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

25.     In addition, the Second Circuit and bankruptcy courts in this district have ruled that a bankruptcy court retains core jurisdiction to interpret and enforce its own prior orders. *See e.g. Travelers Indem. Co. v. Bailey,* 557 U.S. 137, 151 (2009) ("the Bankruptcy Court plainly had jurisdiction to interpret and enforce its prior orders"); *Gupta v. Quincy Medical Center,* 858 F.3d 657,663 (1st Cir. 2017) ("Bankruptcy Courts - like all federal courts - may retain jurisdiction to interpret and enforce their prior orders.") (citation omitted); *In re Millenium Seacarriers, Inc.,* 419 F.3d 83, 97 (2d Cir. 2005) ("Bankruptcy Courts retain jurisdiction to enforce and interpret their own Orders.") (citation omitted); *In re Petrie Retail, Inc.,* 304 F.3d 223, 228-31 (2d Cir. 2002) ("A bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders"); *Bombart v. Family Center at Sunrise, LLC,* 520 B.R. 300,305 (S.D. Fla. 2014) (a bankruptcy court retains the power to enforce its injunctions even after the passage of significant time because the

enforcement and interpretation of a bankruptcy court's injunction should remain with the same court that issued the injunction); *In re Motors Liquidation Co.,* 457 B.R. 276, 287 (Bankr. S.D.N.Y. 2011) ("it's well established, of course, that bankruptcy courts, like other federal courts, have the jurisdiction to enforce their earlier orders, even after confirmation"); *In re Ames Department Stores, Inc.,* 317 B.R. 260, 272 (Bankr.. S.D.N.Y. 2004) ("this Court has subject matter jurisdiction to enforce its orders not only because they were entered in proceedings in a case under title 11 ... with respect to which it undoubtedly had subject matter jurisdiction, but also by reason of the power granted to any federal court to enforce its own orders").

26. In the context of a contempt motion, the "*movant* must establish that (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Latino Officers Ass'n City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009). "[A] defendant is not reasonably diligent when he or she ignores the order or takes only superficial actions that strain both the language and intent of the order. *Medina v. Buther*, 2019 WL 581270, at *25 (S.D.N.Y. Feb. 13, 2019).

27. In the March 26 Order, the Court clearly directed all parties in the Adversary Proceeding to maintain the status quo as it existed on December 17, 2019. As of that date, Rabbi Mayer Zaks did not have authority to unilaterally approve construction projects on the CRDI Property. His conduct in unilaterally altering the physical condition of the CRDI Property by approving the installation of the illegal and unpermitted paved walkway on the Property constituted a clear breach of the status quo and a willful contempt of the March 26 Order.

28. As of December 17, 2019, Rabbi Mayer Zaks did not own any apartments on the CRDI Property, nor have the power to unilaterally dictate who could reside in any apartment, nor

11

harass tenants into moving out of an apartment. These activities constitute a clear breach of the status quo and a willful contempt of the March 26 Order.

29.   Similarly, as of December 17, 2019, Rabbi Mayer Zaks did not have authority to instruct tenants on the CRDI Property not to pay rent and his continuous interference with CRDI's efforts to collect rent by advising tenants that they need not pay rent to CRDI and/or should withhold payment, also constitutes a breach of the status quo, and further willful contempts of the March 26 Order.

30.   Rabbi Mayer Zaks failed to comply with the clear directives of the Court in the March 26 Order and did not even attempt (let alone diligently) to try to comply. Proof of his willful noncompliance is obvious based upon the communications between CRDI's counsel and Rabbi Mayer Zaks' counsel on November 19, 2020, and the building code violations that resulted from Rabbi Mayer Zaks' unilateral and unauthorized conduct which resulted in an undeniable change of the status quo and, consequently a violation of the March 26 Order.

### B. Sanctions are Warranted Under the Circumstances and Rabbi Mayer Zaks Should Be Held in Contempt.

31.   Where a party violates an order of the Court, the Court has the authority under section 105(a) of the Bankruptcy Code to impose a variety of sanctions, including holding the party in contempt. *See Solow v. Kalikow (In re Kalikow)*, 602 F.3d 82, 96 (2d Cir. 2010) ("The statutory contempt powers given to a bankruptcy court under § 105(a) complement the inherent powers of a federal court to enforce its own orders."); *In re Spanish River Plaza Realty Co.,* 155 B.R. 249, 250 (Bankr. S.D. Fla. 1993) (civil contempt powers "are expressly granted to the bankruptcy court by 11 U.S.C. § 105 which authorizes the Court to take any action 'necessary or appropriate to enforce court orders '") (citations omitted).

32.   In addition, "[a]ttorney's fees may also be awarded, if in addition to willfully

disobeying the court order, the 'party acts in bad faith, vexatiously, wantonly or for oppressive reasons.'" *In re Nassoko*, 405 B.R. 515, 520 (Bankr. S.D.N.Y. 2009) (*quoting In re Dabrowski*, 257 B.R. 394, 416 (Bankr. S.D.N.Y. 2001)).

33.     Here, Rabbi Mayer Zaks has willfully and in bad faith violated the express terms of the March 26 Order. Under these circumstances, it is appropriate for the Court to (a) find Rabbi Mayer Zaks in contempt of Court and (b) impose sanctions against Rabbi Mayer Zaks, which are severe enough to ensure compliance with this Court's orders and include the costs and fees incurred by CRDI as a result of Rabbi Mayer Zaks' contemptuous conduct.

34.     Moreover, it is now obvious that Rabbi Mayer Zaks will continue to "interpret" the status quo order as meaning that he is permitted to do whatever he wishes with the CRDI Property, whether CRDI consents or not. Consequently, it is necessary that this Court issue an order enjoining Rabbi Mayer Zaks, during the pendency of this action, from (a) taking any action related to the CRDI Property without the prior written permission of CRDI and/or (b) interfering in any manner with the payment of rent from any tenants on the CRDI Property. Absent such an injunction, it is apparent that Rabbi Mayer Zaks will continue to "interpret" the status quo order as he believes is in his interests, regardless of this Court's intent.

## REQUEST FOR EMERGENCY HEARING

35.     CRDI submits that the relief requested in this Motion is immediately necessary to prevent Rabbi Mayer Zaks from inflicting any additional harm against CRDI and the CRDI Property, and to immediately remedy the building code violations by removing the illegal walkway. Accordingly, CRDI is seeking an emergency hearing on shortened notice to determine the relief requested in this Motion.

36.     CRDI respectfully submits that sufficient cause exists for scheduling a hearing on shortened notice to consider the Motion and refers the Court to the Scott Declaration and Henoch

Zaks Affirmation filed in support of this Motion.

## RESERVATION OF RIGHTS

37. CRDI expressly reserves the right to amend, modify, and/or supplement the relief requested in this Motion in all respects, including, but not limited to, the right to request addition relief as appropriate, prior to or at the applicable hearing.

## CONCLUSION

**WHEREFORE**, CRDI respectfully requests entry of an order (i) holding Rabbi Mayer Zaks in contempt, and awarding damages against him, for his willful violation of the March 26 Order, (ii) directing Rabbi Mayer Zaks to immediately arrange for the removal, at his own cost by a licensed and insured contractor, of the illegal walkway, (iii) enjoining Rabbi Mayer Zaks, during the pendency of this action from (a) taking any action related to the CRDI Property without the prior written permission of CRDI and/or (b) interfering in any manner with the payment of rent from any tenants on the CRDI Property, and (iv) granting such other and further relief as this Court deems just, proper and equitable.

Date: New York, New York
December 11, 2020

KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP

By: */s/ Brendan M. Scott*
　　Tracy L. Klestadt
　　Brendan M. Scott
200 West 41st Street, 17th Floor
New York, New York 10036
Tel: (212) 972-3000

*Attorneys for Congregation Radin Development, Inc.*